12 N.J. Super. 563 (1951)
79 A.2d 912
IN THE MATTER OF THE APPLICATION OF HENRY ZIENOWICZ FOR ISSUANCE OF WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided March 7, 1951.
*566 Mr. William C. Groh, attorney for the petitioner, in forma pauperis.
*567 Mr. Honorable Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. Eugene T. Urbaniak, Deputy Attorney-General, appearing), attorney for the State.
HUGHES, J.C.C.
On the representation that he is illegally confined in the New Jersey State Prison, there was issued to the petitioner, Henry Zienowicz, the writ of habeas corpus under the authority of R.S. 2:82-1. On the return of the writ, testimony was taken and argument heard, resulting in the following factual showing:
On July 1, 1938, in the former Court of Quarter Sessions of Middlesex County, the petitioner, on his plea of non vult to an indictment for robbery (R.S. 2:166-1), was sentenced to serve an "institutional" term of imprisonment at the New Jersey Reformatory at Annandale. This type of sentence has no fixed minimum and the maximum term thereof corresponds to the statutory maximum term of imprisonment for the particular crime for which sentence is imposed (R.S. 30:4-152[1]), which, in the case of robbery, was and is 15 years. R.S. 2:166-1. On July 28, 1939, pursuant to its authority under R.S. 30:4-152, the board of managers of such reformatory paroled petitioner, i.e., terminated the term of service, placing him at liberty under parole supervision for the unserved period of the maximum term aforesaid.
Thereafter and in November, 1942, petitioner, on conviction in the federal court for violation of the National Motor Vehicle Theft Act, was sentenced to serve three years in the custody of the United States Attorney General and was committed to the federal prison at Lewisburg, Pennsylvania. Although the New Jersey authorities filed a detainer against petitioner at Lewisburg, they later withdrew it and took no action to revoke *568 the parole previously granted him from the Annandale sentence. He was conditionally released from Lewisburg on April 9, 1945, and such conditions were fulfilled by him on December 23, 1945. Upon his release from Lewisburg, petitioner returned to New Jersey and parole supervision by the New Jersey authorities continued to be exercised over him. Petitioner was thereafter and in February, 1946, convicted of the crime of larceny of motor vehicle in the appropriate court in Union County and was sentenced to the New Jersey State Prison for a minimum and maximum term of three years.
On the latter sentence, he was received in said prison on February 21, 1946, and, not being paroled on such sentence, served the maximum term thereof, which, after credit to him of commutation time credits uniformly available to prisoners committed to such prison, under R.S. 30:4-140, expired on March 29, 1948. Meanwhile, and on April 22, 1947, as a result of his said conviction in Union County, the board of managers of the reformatory at Annandale, pursuant to its authority under R.S. 30:4-111, revoked the parole previously granted by it, at which time, according to the return to the writ, which was not traversed in this cause, there remained unserved against the maximum of the original Annandale sentence of 1938 a total of six years, four months and four days. Upon such parole being revoked, the Commissioner of the Department of Institutions and Agencies of New Jersey, pursuant to the authority vested in him by R.S. 30:4-85, as amended, ordered the transfer of the remaining portion of the maximum term of petitioner from Annandale, to be served at the New Jersey State Prison.
Petitioner was born on March 8, 1916, and thus was 22 years of age when originally committed to Annandale, 31 years of age when his parole from Annandale was revoked, as aforesaid, and is presently about 35 years of age, these details being material to one of his contentions, which will be mentioned hereafter.
In this field of evidence there is no substantial conflict of fact, but it forms the basis for petitioner's claim that he is presently unlawfully detained. In support of this contention, *569 he makes the following fundamental propositions going to the validity of such confinement.
First, that the parole authorities irrevocably lost jurisdiction of his person by their relinquishment of their parole warrant filed as a detainer against him at Lewisburg. There is no evidence as to the reasons underlying the decision not to seek revocation of parole at this time by reason of the mentioned conviction in the federal court. On the basis of such conviction, the board clearly had the right to revoke the parole. R.S. 30:4-111. Quaere: Does the failure to exercise such right of revocation at a particular time and by reason of a particular breach of condition, of which the board is on notice, have the effect in law of a final discharge of petitioner from parole supervision or sanctions? There is no doubt, nor issue in this case, that the normal period of parole supervision corresponded, at the outset, to the maximum period of the sentence imposed, namely, 15 years from the date of imposition of such sentence on July 1, 1938, less any uniform commutation time credits for work assignments to which the parolee might become entitled. The statute prescribes a method for the shortening of this period of parole for prisoners sentenced to institutional terms as distinguished from minimum-maximum terms, by the issuance by the board of managers of the reformatory of a final discharge from custody ("custody" here referring not to physical imprisonment, but to the constructive custodial power implied in the parole relationship. R.S. 30:4-110). In granting the power to issue this final discharge, the Legislature has left its use to the discretion of the board, keyed to the interim conduct of the parolee and the consequent apparent compatibility of such discharge with the welfare of society. R.S. 30:4-113, as amended L. 1948, c. 86. The statutory power to discharge before the expiration of the maximum term has been held constitutional as not interfering with the prerogative of the sovereignty in the granting of pardon (In re Marlow, 75 N.J.L. 400 (Sup. Ct. 1907)), and our courts have also held that such a final discharge is contingent, in all cases, upon the action of the board of managers of the particular correctional institution involved. An attempted *570 discharge therefrom by the superintendent of such institution, for instance, is not sufficient. In re Wright, 139 N.J. Eq. 515 (Ch. 1947). It seems quite clear to me that the final discharge referred to in the statute can occur only by an intentional and formal action taken by the board of managers, in which the Legislature has vested this important discretionary power. It is noted that the grant of power to the board to revoke parole, where there has been a breach of condition and unfitness to remain further at liberty, as in the case of subsequent conviction of crime, likewise leaves discretion in the board to revoke the parole or not (R.S. 30:4-111), and the legislative intention to repose this discretion in the board is apparent by its use of language differing from that used in conferring revocation power on the former Court of Pardons, which would seem to have made revocation of a license to be at large issued by it mandatory under certain circumstances. R.S. 2:198-3, repealed L. 1949, c. 18. Hence, I determine that the failure of the board to revoke petitioner's parole by reason of the federal court conviction did not effect a termination of his parole status, nor indeed, have any effect whatever on that relationship.
Such discretionary power to withhold revocation for a specific cause, in the judgment of the board, where a later revocation is declared in timely fashion on a separate and subsequent ground for revocation, all during the period of the parole as measured by the initial maximum term of the sentence, does not trench upon the safeguards of the Fourteenth Amendment to the Constitution of the United States, and is not in any sense comparable to the abuses condemned in the case of United States ex rel. Howard v. Ragen, Warden, 59 F. Supp. 374 (U.S.D.C., N.D. Ill., E.D., 1945).
It is next contended that the statute under which the Commissioner transferred petitioner to the New Jersey State Prison for completion of the unexpired period of the sentence to Annandale is unconstitutional. R.S. 30:4-85[2]. Petitioner *571 asserts that this statute violates constitutional guarantees of equal protection of the laws and due process, that it confers judicial powers on the Commissioner and that it effects cruel and unusual punishment in violation of the New Jersey Constitution, Article I, par. 12.
It has been noted that sentences to the New Jersey Reformatory at Annandale are those of "institutional" nature, i.e., with no minimum term, the maximum term being the statutory maximum for the crime involved, and that the board of managers of such institution has very broad powers of termination of the period of service. R.S. 30:4-152. This type of sentence, when considered in connection with R.S. 30:4-151[3], which restricts original commitments to such reformatory to those who previously have not been sentenced to a prison, reformatory or penitentiary, sufficiently indicates a legislative purpose to secure its function as a reformatory-type institution and to prevent the incarceration and training there of criminals of the recidivous type. When contrasted with the type of sentence to the State Prison prescribed by law, which requires the imposition of a fixed minimum term (R.S. 2:192-4), the legislative formula for the imposition of the "institutional" type sentences accentuates the theory of training and social rehabilitation, with termination of service dependent, inter alia, upon its accomplishment, over and above the more normal incidents of imprisonment which are implicit in sentences to the State Prison.
It is, thus, apparent that the State conceives of importance the role of this reformatory, primarily, as a rehabilitative *572 and corrective institution, and the statute legitimately creates a means for the separation therefrom of prisoners deemed unsuited or obstructive to such objectives. This and other purposes, including those incident to security, discipline, curriculum and the like, undoubtedly justify, as an executive rather than as a judicial function, the transfer of prisoners from one institution to another, when authorized by statute, as here. Uram v. Roach, Warden, 37 P.2d 793 (Sup. Ct., Wyo., 1934); Ex Parte Neighbors, 187 P.2d 276 (Crim. Ct. of App., Okl., 1947); Moffett v. Hudspeth, Warden, 165 Kan. 656, 198 P.2d 153 (Sup. Ct., Kan., 1948); People v. Scherbing, 93 Cal. App. 2d 736, 209 P.2d 796 (Dist. Ct. of App., Cal., 1949).
The transfer ordered in this case, without notice and hearing, is not illegal, nor is the statute so authorizing it unconstitutional as a denial of due process. The phrase "due process of law" is intended to guarantee to a defendant a fair and impartial trial, and is not interpreted as extending in application to the method of incarceration determined by administrative officials or body, bested with that power by statute, in the execution of sentence, after a trial in due course which stands unchallenged for its legality. Nor is such transfer, nor statute authorizing it, subject in any way to characterization as cruel and unusual punishment. Such a statute is a proper exercise of the power of a State for the regulation of the welfare of the individual whose liberty may be thus restrained, as well as for the protection of the community at large, under a clearly described policy of educational and reformatory discipline. Stagway v. Riker, 84 N.J.L. 201 (Sup. Ct. 1913).
That such a transfer is an executive rather than a judicial function and, moreover, presumptively within the contemplation of the court imposing sentence, is further apparent when it is considered that statutes conferring the right of transfer on administrative officials, which are in effect at the time of imposition of sentence, are as much a part thereof as though specifically incorporated in the sentence and, thus, the possibility of administrative transfer is an incident impliedly annexed thereto. Cassidy's Petition, 13 R.I. 143 (Sup. Ct., R.I., 1880); Re Murphy, 62 Kan. 422, 63 Pac. *573 428 (Sup. Ct., Kan., 1901); Pellissier v. Reed, 75 Wash. 201, 134 Pac. 813 (Sup. Ct., Wash., 1913); Glazier v. Reed, Warden, 116 Conn. 136, 163 A. 766 (Sup. Ct. of Errors, Conn., 1933); Ex Parte Olden, 199 P.2d 228, (Crim. Ct. of App., Okla., 1948).
The validity of like statutes permitting transfer of prisoners has been upheld, quite uniformly, as against objections that they constitute a denial of due process or confer judicial powers on administrative officials, or constitute cruel and unusual punishment. 15 Am. Jur., Crim. Law, sec. 555.
This petitioner complains that upon such transfer, although he is subject, under R.S. 30:4-86, to the rules and regulations of said State Prison, he is denied the right to earn commutation time credits under R.S. 30:4-140, which would materially reduce the maximum term of his sentence. The latter statute grants incentive reward to those originally committed to the State Prison by way of time credits against the minimum and maximum terms of their sentences in return for work assignments faithfully performed and in recognition of good behavior, on a uniform scale. These credits, as such, are withheld from reformatory inmates transferred to the State Prison, as here, although credits are allowed under R.S. 30:4-92, for "employment in productive occupations" within the prison. Such reformatory prisoner, although serving the balance of his term in the State Prison, is not required to do hard labor, which is undoubtedly the "assigned labor" referred to in R.S. 30:4-140, as a basis for remission of time, and if he does work, he is allowed time credits as above. The withholding of the commutation time credits under R.S. 30:4-140, however, does not increase or change the sentence originally imposed (In re White, 10 N.J. Super. 600 (Cty. Ct. 1950)), nor does it discriminate against petitioner or those in his class or deny them the equal protection of the laws. Such statute is restricted to those prisoners having minimum and maximum terms, and the incentive feature as to credits earned, while shortening the maximum term of imprisonment, is primarily apropos to eligibility for parole, which, under R.S. 30:4-123.10, N.J.S.A., occurs *574 at the expiration of service of such minimum term, as reduced by such time credits, or upon service of one-third of the maximum term without regard to commutation time, whichever occurs sooner.
But a reformatory inmate is immediately and always eligible for consideration for parole and his transfer to the New Jersey State Prison, under the statute referred to, does not alter this status. In fact, under existing law, he has two avenues of parole which may be granted him by the board of managers of the reformatory-type institution to which he was originally committed, as noted (R.S. 30:4-152), and also by the State Board of Parole under L. 1950, c. 30.
The third point made by this petitioner has to do with his age; he contends that the right to detain him on the Annandale sentence on which he is presently held, terminated when he achieved the age of 30 years. Reference to the statute, R.S. 30:4-151, indicates that commitment to the New Jersey Reformatory at Annandale is restricted to males between the age of 16 and 26 years, but this has no reference to the right of detention as does R.S. 30:4-157.6, N.J.S.A., for instance, which provides, with regard to another corrective institution (State Home for Boys at Jamesburg), that a youth may be detained there "* * * until he reaches the age of twenty-one years, * * *." Annandale is not an institution "wherein the right of detention is determined by age," within the intendment of R.S. 30:4-113, and this point of the petitioner is devoid of merit.
I conclude that the petitioner is properly held to serve the unexpired maximum term of his original 1938 sentence to Annandale, unless sooner paroled; that the statute under which he was tranferred is wholly constitutional and that his transfer thereunder to the New Jersey State Prison for completion of his sentence was legal in all respects; and that his age is no impediment to the right and duty of the State to detain him in custody.
The writ is discharged and the petitioner remanded to custody.
NOTES
[1] "The courts in sentencing to the reformatory shall not fix or limit the duration of sentence, but the time which any person shall serve in the reformatory shall not in any case exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, and the term of service may be terminated by the board of managers of the reformatory in accordance with its rules and regulations formally adopted."
[2] R.S. 30:4-85, N.J.S.A. "Any inmate of any correctional institution as classified in section 30:1-7 of this Title may be transferred to any other such correctional institution by order of the commissioner directing such transfer, either upon the application of the chief executive officer or upon the initiative of the commissioner. * * *" Source. L. 1918, c. 147, § 213, p. 357, as am. by L. 1919. c. 96, § 2, p. 219 [1924 Suppl. § 34-93], L. 1931, c. 96, § 1, p. 162.
[3] R.S. 30:4-151, N.J.S.A. "Any male between the ages of sixteen and twenty-six years, who has been convicted of a crime punishable by imprisonment in the state prison, who has not previously been sentenced to a state prison, reformatory or a penitentiary in this or any other state, may be committed to the reformatory at Annandale or to the reformatory at Rahway, but no person who has been previously convicted of a crime punishable by imprisonment in the state prison, and sentenced to a prison, reformatory or penitentiary may be sentenced to the reformatory at Annandale."