17 N.J. Super. 198 (1951)
85 A.2d 327
IN THE MATTER OF THE APPLICATION OF WILLIAM HODGE FOR ISSUANCE OF WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided December 13, 1951.
*201 Petitioner, William Hodge, pro se.
HUGHES, J.C.C.
Petitioner, William Hodge, is confined in the New Jersey State Prison and on the basis of petitions filed under R.S. 2:82-1, et seq., N.J.S.A., seeks issuance of the writ of habeas corpus to examine into the legality of his imprisonment.
On November 17, 1944, this petitioner was convicted in the former Mercer County Court of Quarter Sessions on an indictment charging him with the crime of robbery. The jury verdict of guilty, he alleges, was returned in his absence, late at night while he was in custody and, therefore, involuntarily absent from such proceeding. On November 24, 1944, he appeared before such court for sentence, and there was imposed upon him an "institutional" term at the former New Jersey Reformatory at Rahway. R.S. 30:4-146, N.J.S.A., amended L. 1948, c. 60. This sentence potentially accommodated the statutory maximum term for the offense involved (R.S. 30:4-148, N.J.S.A.), which in the case of robbery amounts to 15 years. R.S. 2:166-1, N.J.S.A. He entered upon service of this term on November 24, 1944, was assigned institutional number 25379 and the date of November 24, 1959, was established of record as his maximum expiration *202 date. This, of course, is a gross date since the prisoner is entitled to earn work time credits under R.S. 30:4-92, N.J.S.A., but not the more substantial credits available to those sentenced directly to the New Jersey State Prison under R.S. 30:4-140, N.J.S.A. Ex parte White, 10 N.J. Super. 600 (Cty. Ct. 1950); Ex parte Zienowicz, 12 N.J. Super. 563 (Cty. Ct. 1951).
Having assaulted a guard while so confined, petitioner was indicted for assault and battery and pleaded non vult in the appropriate court in Middlesex County, which, on July 19, 1945, sentenced him to serve not less than one and one-half nor more than two years in the New Jersey State Prison. He was forthwith taken to such prison and assigned a prison number, 24633. The sentencing judge in Middlesex County did not, in terms, order that this sentence should run consecutively to the former sentence then being served at Rahway, and in this posture such sentence would ordinarily run concurrently therewith. Ex parte DeLuccia, 10 N.J. Super. 374 (Cty. Ct. 1950). There is some doubt, however, that this rule would apply in the instant case because the sentences were to be served at different institutions, which would ordinarily require them to be served consecutively, even though not so specified by the court. U.S. v. Remus, 12 F.2d 239 (C.C.A. 6, 1926), cert. den. 271 U.S. 689, 46 Sup. Ct. 640, 70 L.Ed. 1153 (1926). It is unnecessary to decide this question since the State Prison authorities (perhaps in view of the fluidity of transfer permitted by R.S. 30:4-85, N.J.S.A.) have continued to regard the date of November 24, 1959, as the gross maximum expiration date of the petitioner's Rahway sentence.
By order of the Commissioner of Institutions and Agencies, dated September 16, 1946, and under the authority of R.S. 30:4-85, N.J.S.A., supra, the Rahway term of the petitioner was transferred to be served at the New Jersey State Prison. This court has previously held this transfer statute valid and constitutional. Ex parte Zienowicz, supra.
On September 27, 1946, petitioner received from the *203 former New Jersey Court of Pardons a "license to be at large" (R.S. 2:198-1, et seq., N.J.S.A., repealed L. 1949, c. 18, p. 63, § 6) on the Middlesex County sentence, and he was thereupon "reverted" to continue service of his Rahway sentence under number 25379. The use of the term "reverted" is something of a misnomer here since prior to September 27, 1946, the petitioner was serving the two sentences concurrently, although separately. U.S. v. Patterson, Keeper, &c., 29 F. 775 (Cir. Ct. D.N.J., 1887). Thus he was continually serving the Rahway sentence, in contemplation of law, and did not "revert" to it. He has not been paroled since on the Rahway sentence and is presently serving that sentence and it is this imprisonment which he claims here to be illegal.
Petitioner asserts that since the judge who imposed sentence on the Middlesex County charge knew that he was then serving a term of confinement at Rahway, such sentence had the effect of merging that term in the Middlesex County sentence, because the confinement on the latter was ordered to be at the New Jersey State Prison and no specification was made that it should run concurrently to the Rahway term. This point is specious. The Middlesex County Court could not terminate the Rahway sentence, for the power to do so, or to grant parole thereon, was confided by law to the board of managers of such institution (R.S. 30:4-148, N.J.S.A., supra) and to the former Court of Pardons. R.S. 2:198-1, N.J.S.A., supra. Unless excused by death, authorized termination, or grant of parole, a prisoner must serve the maximum of his sentence. Ex parte Fitzpatrick, 9 N.J. Super. 511 (Cty. Ct. 1950).
Petitioner urges that the administrative delay in ordering transfer of the remaining part of his Rahway sentence to be served at the State Prison, i.e., by order entered October 16, 1946, ought to result in his immediate release. This ground too is baseless. The petitioner has not been injured by that delay and, as stated, the time elapsing from July, 1945, when the Middlesex County sentence was imposed, runs also against the maximum of his Rahway sentence.
*204 He urges quite strongly that the former Court of Pardons issued him his license to be at large without specifying the term of imprisonment to which it referred and, hence, must be viewed as dispositive of both of his sentences.
This claim is false and probably intentionally perjurious. The actual original license to be at large remains on file at the State Prison, and petitioner undoubtedly possessed a copy of it. It is Certificate No. 14,062, dated September 27, 1946, and reads, in part, as follows:
"The Court of Pardons of the State of New Jersey hereby grants to William Hodge, No. 24,633, convicted of the crime of assault and battery in the Middlesex County Court of Quarter Sessions of the term of April A.D. One Thousand Nine Hundred and Forty-five, and now confined in the State Prison at Trenton, this License to be at Liberty, upon the security, terms, conditions and limitations annexed hereto. * * *"
In addition, this license contains typewritten material reading as follows: "September 27, 1946. State Prison  Exp. of minimum. Reverts to No. 25,379." It is quite obvious that this license is limited by its terms to the Middlesex County sentence. The requirement of individuation in the issuance of such licenses was implicit in the statute and our present Supreme Court has so held. State v. Court of Common Pleas, &c., 1 N.J. 14 (1948). Hence the operation of such license was limited accordingly and thus had no effect on the term of imprisonment now being suffered by petitioner.
The petitioner's final point deals with the alleged invasion of his constitutional right incident to his asserted compulsory absence from the rendition of the jury verdict of guilty on the robbery indictment. This constitutional violation is urged as having been destructive of the primary jurisdiction of the court to impose sentence. Johnson v. Zerbst, 304 U.S. 458, 58 Sup. Ct. 1019, 82 L.Ed. 1461 (1938).
At common law, his presence thereat would seem to be necessary in view of the nature of the crime charged, or else the conviction would have been void. Petitioner contends that this right is paramount, whether it is considered as being *205 based upon strict constitutional right as such, or on the fundamentals of procedure inherent in Anglo-Saxon jurisprudence. Diaz v. U.S., 223 U.S. 442, 32 Sup. Ct. 250, 56 L.Ed. 501 (1912); Milewski v. Ashe, Warden, &c., 363 Pa. 596, 70 A.2d 625 (Sup. Ct. Pa. 1950); In re Graham, 13 N.J. Super. 449 (App. Div. 1951).
In whatever aspect this point is raised, I have decided to withhold the writ of habeas corpus because of the long and unexplained delay in applying for the writ. No appeal was taken within the time then limited by law for appeal. It is true that there is no specific time within which relief on habeas corpus must be sought. There are instances in which basic concepts of justice require the issuance of the writ, and its fruition in the discharge of a prisoner even after a very great lapse of time. Ex parte Carter, 14 N.J. Super. 591 (Cty. Ct. 1951).
My denial of the writ in the instant case is based upon the reasoning of the late Vice Chancellor Buchanan in the case of In re Tremper, 126 N.J. Eq. 276 (Ch. 1939).[*] Within the *206 meaning of that decision, I classify the present application as an attempt to perpetrate a gross fraud and imposition upon the courts and the people of the State of New Jersey. It is the business of our courts to promote and secure justice to all and it is sometimes the burden of the courts, such as in habeas corpus matters, to ferret out injustice which may be hidden in the obscurity of human memory, or the basic ignorance of a handicapped sufferer from that injustice. But the poles of distinction are quite clear. Ex parte Carter, supra; Ex parte Zee, 13 N.J. Super. 312 (Cty. Ct. 1951). The Tremper rule must be applied where its application is just and I have no difficulty in determining that it should be applied in the instant case. This discretion to withhold the writ, even in the face of claimed jurisdictional defect in the proceedings attacked, must be exercised where warranted, in order to prevent the virtual collapse of this important phase of the administration of criminal justice.
For the above reasons, I deny issuance of the writ of habeas corpus and will enter an appropriate order with the clerk of the Mercer County Court, Law Division, to establish a record of such disposition.
NOTES
[*] "How can it be said that although a defendant claiming a nonjurisdictional but grievously harmful error, is prevented by the statutory provisions (prescribed by the legislature as expressing that which is just and right) from having his claim entertained by any court after one year from the imposition of sentence, nevertheless a defendant claiming a jurisdictional error * * *, ought as a matter of fairness, justice and right, to be entitled to have his claim entertained, on habeas corpus, four or five years after the imposition of sentence? And if four or five years after, why not ten or twenty or thirty years after?

* * * * * * * *
True it is that it is the public policy of this state that all due safeguards against injustice, and all constitutional rights, should be preserved to persons accused of crime; and that a court, on habeas corpus, has the corresponding judicial responsibility of endeavoring to see to it that that policy is properly carried out. But it is equally true that it is the public policy of this state, and to the interest of its citizens, that those guilty of crime should not go unpunished; that there should not be undue litigation; and that where the state has provided for the person accused of crime, by means other than habeas corpus, all due and reasonable opportunities for him to obtain for himself the enforcement of the legal and constitutional rights to which he is entitled, he should not be permitted either to harass the state and its citizens by further repeated attempts by legal proceedings to litigate over again that which has been definitely determined against him, nor to endeavor to accomplish a fraud and imposition upon the state and its citizens under the guise of an effort to obtain the benefit of his legal and constitutional rights aforesaid after having had full and ample opportunity to obtain those benefits. As to this, also, the court, on habeas corpus, has a corresponding judicial responsibility."