128 N.J. Super. 254 (1974)
319 A.2d 762
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETER BONO, JR., ROBERT LOMBARD, AND EUGENE MEYERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1974.
Decided May 9, 1974.
*256 Before Judges COLLESTER, LYNCH and MICHELS.
Ms. Rosemary K. Reavey, Assistant Public Defender, argued the cause for appellant Peter Bono, Jr. (Mr. Stanley C. Van Ness, Public Defender, attorney).
*257 Messrs. Wolin & Garrubbo submitted a statement in lieu of brief on behalf of appellant Robert Lombard.
Mr. Michael N. Tobin argued the cause for appellant Eugene Meyers (Messrs. Shevick, Ravich, Koster & Baumgarten, attorneys).
Mr. Elson P. Kendall, Assistant Prosecutor, argued the cause for respondent (Mr. Karl Asch, Union County Prosecutor, attorney).
The opinion of the court was delivered by MICHELS, J.A.D.
This is a consolidated appeal by three defendants from convictions of rape in violation of N.J.S.A. 2A:138-1 (count 1), assault with intent to commit rape in violation of N.J.S.A. 2A:90-2 (count 2), and lewdness in violation of N.J.S.A. 2A:115-1 (count 3). The court merged the convictions of rape (count 1) with those of assault with intent to rape (count 2) for purposes of sentencing and sentenced each of the defendants on those counts to a single indeterminate term in the Youth Correctional Institution wtih a maximum fixed at 17 years, and to consecutive indeterminate terms with a maximum fixed at three years on the convictions of lewdness (count 3).[1] Defendants appeal.

I
All defendants raise as plain error that the offenses of rape, assault with intent to commit rape, and lewdness involved a single transaction and, therefore, merged. It is well settled that the crime of assault with intent to rape is necessarily *258 a constituent element of the greater crime of rape, and that these two crimes merge when a conviction for the greater offense ensues. State v. Riley, 28 N.J. 188, 195 (1958), cert. den. 359 U.S. 313, 79 S.Ct. 891, 3 L.Ed.2d 832 (1959), petition for writ of habeas corpus denied and cert. den. 361 U.S. 879, 80 S.Ct. 166, 4 L.Ed.2d 117 (1959). Accordingly, the convictions of assault with intent to rape merged into the convictions of rape, and the trial court should have vacated the lesser convictions of assault with intent to commit rape.
The State argues that since the trial court merged both convictions for purposes of sentencing and imposed a single indeterminate sentence, defendants were not prejudiced. We disagree. Since the convictions on these two counts merged, defendants' records should reflect only the convictions for rape, and not the convictions for assault with intent to commit rape as well. Accordingly, the judgments of convictions of assault with intent to rape are vacated.
Defendants' argument that the trial court erred in not treating the crime of lewdness as having merged with the crime of rape, at least for purposes of sentencing since they constituted a single criminal espisode, is totally lacking in merit. A reading of the two statutes under which defendants were indicted readily reveals that separate and distinct crimes are involved. Each prohibits separate and distinct criminal acts, and the evidence necessary to convict under each statute is clearly different. See State v. Currie, 41 N.J. 531, 537-539 (1964); State v. Montague, 101 N.J. Super. 483, 489 (App. Div. 1968), mod. on other grounds 55 N.J. 387, 406-407 (1970); State v. Mills, 51 N.J. 277, 289 (1968), cert. den. 393 U.S. 832, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968); State v. Craig, 48 N.J. Super. 276, 279 (App. Div. 1958); State v. White, 105 N.J. Super. 234, 236-237 (App. Div. 1969), certif. den. 54 N.J. 242 (1969). The fact that separate crimes may have been committed closely in point of time does not operate to merge them into *259 a single crime. State v. Chevencek, 127 N.J.L. 476, 479 (Sup. Ct. 1941); State v. McFadden, 32 N.J. Super. 258, 261 (App. Div. 1954).
N.J.S.A. 2A:115-1 provides in pertinent part that "[a]ny person who * * * in private commits an act of lewdness or carnal indecency with another, grossly scandalous and tending to debauch the morals and manners of the people, is guilty of a misdemeanor." "Lewdness" was defined in the context of an earlier version of this statute (R.S. 2:140-1) in State v. Brenner, 132 N.J.L. 607 (E. & A. 1945), as follows:
Lewdness, within the concept of the statute, imports some degree of sexual aberration or impurity. It denotes gross and wanton indecency in the sexual relations. [at 610]
And in State v. Baldino, 11 N.J. Super. 158, 162 (App. Div. 1951), as "the irregular indulgence of lust, whether public or private." N.J.S.A. 2A:115-1 has been held to comprehend commission of acts of fellatio. See State v. Fleckenstein, 60 N.J. Super. 399 (App. Div. 1960), certif. den. 33 N.J. 109 (1960); State v. Morrison, 25 N.J. Super. 534, 543 (Cty. Ct. 1953). But cf. State v. Dorsey, 64 N.J. 428, 433 (1974). Defendants do not argue to the contrary.
N.J.S.A. 2A:138-1 provides in pertinent part:
Any person who has carnal knowledge of a woman forcibly against her will * * * is guilty of a high misdemeanor. * * *
"Carnal knowledge" or "rape" involves actual sexual penetration of the sexual organ of the female by the sexual organ of the male. Application of Faas, 42 N.J. Super. 31, 35 (App. Div. 1956), cert. den. 353 U.S. 940, 77 S.Ct. 820, 1 L.Ed.2d 762 (1957); State v. Hummer, 73 N.J.L. 714, 718 (E. & A. 1906), pet'n for reh'g den. 81 N.J.L. 430 (E. & A. 1906); State v. Riley, supra, 49 N.J. Super. 570, at 584 (App. Div. 1958).
*260 It is obvious that each of these statutes requires proof of completely different conduct to sustain a conviction under each one.
The commission of sodomy per anum or per os is not the commission of a rape, although both offenses involve carnal knowledge of the victim, since carnal knowledge in its generally accepted meaning signifies sexual intercourse * * * while sodomy involves abnormal and perverted sexual relations. * * * [75 C.J.S. Rape § 5 at 466 (1952)]
Moreover, generally it has been held that a conviction or an acquittal for rape does not bar a prosecution for lewd and lascivious conduct or for sodomy. 22 C.J.S. Criminal Law § 292 at 767-768 (1961). Accordingly, the offense of rape and that of lewdness or carnal indecency were based on separate and distinct prohibited acts. Neither act was a necessary part of the other. Each constituted independently a criminal offense, for which separate sentences were proper.

II
Defendants Meyers and Lombard further contend that the out-of-court identifications of them made by the victim were so impermissibly suggestive as to result in a denial of due process, and that the victim did not have an independent basis to identify them in the court room so as to validate the in-court identification.[2]
The United States Supreme Court has held that whether an out-of-court identification was so unnecessarily suggestive and conducive to irreparable mistaken identification so as to deprive defendant of due process of law, depends on the totality of the circumstances surrounding it. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Subsequently, in Simmons v. United States, 390 *261 U.S. 377, 383-384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), where the court was concerned with the validity of a pre-arrest identification of photographs of defendant by an eyewitness to the crime, the court reaffirmed its holding in Stovall and held that in determining the admissibility of an in-court identification after a suggestive out-of-court identification, each case must be considered on its own facts. In Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), the Supreme Court held that the standard for the admissibility of testimony concerning an out-of-court identification is whether there is a very substantial likelihood of misidentification, even where the confrontation procedure was suggestive. The factors to be considered in such an evaluation include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
In State v. Farrow, 61 N.J. 434 (1972), cert. den. 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973), our Supreme Court enunciated the test for determining the admissibility of such out-of-court identifications as follows:
Impermissive suggestibility is to be determined by the totality of the circumstances of the identification. It is to be stressed that the determination can only be reached so as to require the exclusion of the evidence where all the circumstances lead forcefully to the conclusion that the identification was not actually that of the eyewitness, but was imposed upon him so that a substantial likelihood of irreparable misidentification can be said to exist. What is being tested in the preliminary inquiry as to admissibility is whether the choice made by the witness represents his own independent recollection or whether it in fact resulted from the suggestive words or conduct of a law enforcement officer. The strength or credibility of the identification is not the issue on admissibility; that is a matter of weight, for the fact finder, under appropriate instructions from the trial judge. * * * [at 451]
*262 The function of this court as a reviewing court is to decide whether, considering the evidence as a whole, the trial judge could reasonably conclude that the identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See State v. Mars, 107 N.J. Super. 36, 40 (App. Div. 1969).
In the instant case, there was ample evidence presented at the voir dire from which the trial judge could reasonably have concluded that the identifications of defendants Meyers and Lombard by the victim were not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Considering the factors announced by the United States Supreme Court in the Biggers case, it is clear that her identifications were valid. All three identifications were stated in court by the victim and by Detective Zehl to have been positive ones. In addition, Detective Savick so testified with respect to the identifications of Lombard and Meyers. The descriptions which the victim had given to the police were thorough and accurate. She clearly had the opportunity to view the defendants closely at the time of the crime. Her high degree of attention is manifested by the notice which she took of the details of the car, including the mileage and the license plate number. The length of time between the offenses and the identifications was relatively short (some 16 hours in the case of defendant Bono, 19 hours in the case of defendant Lombard, and 20 hours in the case of defendant Meyers). In addition, her testimony as well as that of Detective Zehl established that she was told only "to look at a man" when she identified both defendant Bono and defendant Lombard, and her testimony as well as that of Detective Savick established that she was only told to "take a look" with respect to defendant Meyers. None of defendants was handcuffed, nor was it otherwise intimated to the victim in any manner that the police had any other proof *263 implicating each man in the crime. See State v. Earle, 60 N.J. 550, 553 (1972).
Furthermore, it must be remembered that the victim was an intelligent, educated 22-year-old graduate student at the Hunter School of Social Work at City University in New York. Prior to the assault, she had a conversation at the Keyboard Lounge, where she was a dancer, with one of the defendants who introduced himself as "Bobby" (Lombard). Another defendant came into the bar, whom she later ascertained to be "Pete" (Bono), and gave her a hot dog. The third defendant (Meyers) had also been in the bar, sat with her and offered to buy her a drink. He had even asked her for a date, and later asked if he could give her a ride to Penn Station. Weighing all of the factors here involved, we find no substantial likelihood of misidentification, and hold that the evidence was properly allowed to go to the jury.
Defendants Meyers and Lombard further challenge the in-court identifications as being "tainted" by the out-of-court confrontations between them and the victim. While this argument, therefore, need not be considered, as it does not constitute plain error (R. 2:10-2; State v. Macon, supra; State v. Mars, supra, 107 N.J. Super. at 38-39), nevertheless, we have considered it and find it totally lacking in merit. What we have said concerning the validity of the out-of-court identifications is equally applicable and persuasive to sustain the in-court identifications of all defendants. It must be remembered, as pointed out by Justice Powell in the Biggers case, that the witness identifying defendants "was no casual observer, but rather the victim of one of the most personally humiliating of all crimes."

III
Finally, all defendants contend that the trial judge abused its discretion in imposing consecutive indeterminate reformatory sentences. The thrust of the argument is that since the judge imposed an indeterminate sentence *264 with a maximum fixed at 17 years on the rape conviction and an additional consecutive indeterminate term with a maximum fixed at three years on the lewdness conviction, the sentences were excessive and repugnant to the theory of rehabilitation. They also contend that the imposition of such consecutive indeterminate sentences was beyond the power of the court to impose under N.J.S.A. 30:4-148. We disagree. Our court in State v. Horton, 45 N.J. Super. 44 (App. Div. 1957), expressly declared that the imposition of consecutive reformatory sentences is not repugnant to the legislative policy of rehabilitation, and that the court has the power to impose consecutive terms under N.J.S.A. 30:4-148, stating:
The trial judge pointed out in his opinion that if there may not be a second consecutive reformatory sentence, the statute might be construed by sentencing judges inimically to rehabilitation in that, should the court on a second conviction sentence the defendant to State Prison, he would not have the benefit of the objectives which the Legislature provided by permitting sentence to the reformatory. No harmful effect need result from the practice of imposing a second reformatory sentence, since both the consecutive reformatory sentence as well as the original sentence may at any time be terminated when in the discretion of the board of managers the prisoner's conduct so warrants. Cf. Perry v. Martin, 73 N.J.L. 310 (Sup. Ct. 1906); In re Hodge, 17 N.J. Super. 198 (Cty. Ct. 1951), affirmed 24 N.J. Super. 564 (App. Div. 1953).
The statute before us contains no restrictive provision against consecutive reformatory sentences; had the Legislature so intended, it could have explicitly so provided. * * * [at 48]
We are of the view that the decision in State v. Horton is still legally sound. In fact, recently the Appellate Division recognized that consecutive indeterminate sentences may be imposed under N.J.S.A. 30:4-148. State v. Prewitt, 127 N.J. Super. 560 (App. Div. 1974). While there may be some reservation as to the appropriateness of the imposition of consecutive indeterminate sentences in a particular case, nevertheless, such sentences are not repugnant to the theory of rehabilitation. Parole from an indeterminate term in the Youth Correctional Institution Complex is under the control *265 of the Board of Trustees of the institution and parole release may occur at any time. See State v. Prewitt, supra; State v. Horton, supra; N.J.S.A. 30:4-148, 30:4-1.1(n) and 30:4-106.
We have reviewed carefully the sentences imposed by the trial court on each of the defendants. In the light of the circumstances of the crimes committed by them and their pre-sentence reports, we find that the sentences imposed on each defendant were not manifestly excessive or unduly punitive and that there was no abuse of judicial discretion. See State v. Tyson, 43 N.J. 411 (1964), cert. den. 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965).
For the foregoing reasons, the judgments of conviction of defendants of assault with intent to rape (count 2) are vacated, and the judgments of conviction of rape (count 1) and lewdness (count 3) and the sentences imposed thereon are affirmed.
NOTES
[1] Technically, the sentences should be to the Youth Correctional Institution Complex with instructions that defendants be delivered directly to the Youth Reception and Correction Center, Yardville. See N.J.S.A. 30:4-148.
[2] Defendant Bono does not contest his in-court or out-of-court identification on this appeal.