253 N.J. Super. 149 (1992)
601 A.2d 249
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KENNETH E. LEVINE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 17, 1991.
Decided January 17, 1992.
*151 Before Judges MICHELS and CONLEY.
Wilfredo Caraballo, Public Defender, attorney for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the letter brief).
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (Jessica S. Oppenheim, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Kenneth Levine appeals from an order of the Law Division that denied his motion to correct his sentence, which he claims was illegal. The pivotal issue raised by this appeal is whether a defendant, who has served a federal prison or penitentiary term, can properly be sentenced to the Youth *152 Correctional Institution Complex in view of the provisions of N.J.S.A. 30:4-147.
The procedural background giving rise to this appeal commenced in the January, 1974 term of the Union County Grand Jury when defendant was indicted (Indictment No. 1102) and charged with conspiracy to commit robbery in violation of N.J.S.A. 2A:141-1, N.J.S.A. 2A:98-1 and N.J.S.A. 2A:98-2 (Count 1); possession of a deadly weapon, to wit, a pistol, without first having obtained a permit to carry same, in violation of N.J.S.A. 2A:151-41(a) (Count 2); possession of a pistol with intent to use same unlawfully against another in violation of N.J.S.A. 2A:151-56 (Count 3); possession of a dangerous instrument, to wit, a knife, in violation of N.J.S.A. 2A:151-41(c) (Count 4); and possession of a knife with intent to use same unlawfully against another in violation of N.J.S.A. 2A:151-56 (Count 5). In July, 1975, following plea negotiations, defendant pleaded guilty to conspiracy to commit robbery under Count 1 and to possession of a knife under Count 4. In September, 1975, in accordance with the plea agreement, the trial court sentenced defendant to 364 days in the Union County Jail, suspended the sentence and placed defendant on probation for two years for his conviction for conspiracy under Count 1. In addition, the trial court sentenced defendant to a concurrent 364 day jail term for his conviction for possession of a knife under Count 4. The remaining counts of this indictment were dismissed.
In the January, 1975 term, the Union County Grand Jury indicted defendant (Indictment No. 1019) and charged him with forgery in violation of N.J.S.A. 2A:109-1(a) (Count 1); breaking and entering into a motor vehicle with intent to steal in violation of N.J.S.A. 2A:94-1 (Count 2); and larceny in violation of N.J.S.A. 2A:119-2(a) (Count 3). In December 1977, following plea negotiations, defendant entered a retraxit plea of guilty to forgery under Count 1. In January, 1978, in accordance with the plea agreement, the trial court sentenced defendant to a five-year indeterminate term at the Youth Reception and Correction *153 Center, Yardville,[1] which was to be served concurrently with a sentence imposed under Union County Indictment No. 1159 and with a federal prison term which defendant was then serving. The remaining counts of the indictment were dismissed.
In the May, 1975 term, the Union County Grand Jury had indicted defendant (Indictment No. 1159), and charged him with assault with intent to commit robbery in violation of N.J.S.A. 2A:90-2 (Count 1); robbery in violation of N.J.S.A. 2A:141-1 (Count 2); robbery while armed with a knife in violation of N.J.S.A. 2A:151-5 (Count 3); and possession of a dangerous instrument, to wit, a knife, in violation of N.J.S.A. 2A:151-41(c) (Count 4). In January, 1978, following plea negotiations, defendant pleaded guilty to robbery under Count 2 and armed robbery under Count 3. The trial court sentenced defendant to a indeterminate term not to exceed 15 years at the Youth Reception and Correction Center, Yardville, for his robbery conviction under Count 2 and to a concurrent indeterminate term not to exceed five years for his armed robbery conviction under Count 3. These concurrent indeterminate terms were to run concurrently with the sentence imposed under Indictment No. 1019 and with the federal prison term defendant was then serving. The remaining counts of the indictment were dismissed. Defendant appealed, challenging solely the excessiveness of his sentence. In February, 1979, we affirmed defendant's sentences imposed thereon in an unpublished opinion, State v. Levine, A-3036-77.
In February, 1990, defendant filed a pro se post-conviction petition to correct his sentence. He claimed that his sentence to the Youth Reception and Correction Center, Yardville, was illegal because he had previously served a federal penitentiary sentence. The trial court denied defendant's motion, reasoning *154 that N.J.S.A. 30:4-147 did not specifically exclude persons who had previously been sentenced to a Federal prison from being sentenced to the Youth Correctional Institution Complex. Defendant appealed. Defendant seeks a reversal of the order denying his post-conviction petition to correct his sentence. He claims that his indeterminate sentence to the Youth Reception and Correction Center, Yardville, was illegal, and urges us to modify his sentence to a term of 15 years.
Preliminarily, a threshold question is whether defendant's claim may be presented on post-conviction relief. R. 3:22-2(c) provides that a petition for post-conviction relief is cognizable if based on "[i]mposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law." A distinction must be drawn, however, between a claim that a sentence is "illegal" and a claim that the sentence is merely "excessive":
The rule is, of course, fairly established that mere excessiveness of sentence otherwise within authorized limits, as distinct from illegality by reason of being beyond or not in accordance with legal authorization, is not an appropriate ground of post-conviction relief and can only be raised on direct appeal from the conviction. [State v. Clark, 65 N.J. 426, 436-37, 323 A.2d 470 (1974) (emphasis added)].
Accord, State v. Flores, 228 N.J. Super. 586, 591-92, 550 A.2d 752 (App.Div. 1988), certif. denied, 115 N.J. 78, 556 A.2d 1220 (1989); State v. Pierce, 115 N.J. Super. 346, 347, 279 A.2d 871 (App.Div.), certif. denied, 59 N.J. 362, 283 A.2d 106 (1971); see R. 3:21-10(a); R. 3:22-2; R. 3:22-12. Stated somewhat differently, "[o]nly the legality of the sentence, as opposed to excessiveness, can be challenged on the post-appeal application." State v. Flippen, 208 N.J. Super. 573, 575 n. 2, 506 A.2d 768 (App.Div. 1986).
Although the distinctions between "excessive" and "illegal" sentences are often blurred, State v. Flores, supra, 228 N.J. Super. at 592-3, 594, 550 A.2d 752, such a problem is not presented in this case. Here, petitioner clearly contends that he could not be sentenced to an indeterminate term to the Youth Reception and Correction Center pursuant to N.J.S.A. 30:4-147 because *155 he had previously been sentenced to a Federal prison term. Thus, petitioner contends that his sentence is not authorized by statute, and, therefore, is illegal. This clearly is an appropriate ground for post-conviction relief. See State v. Clark, supra, 65 N.J. at 436-37, 323 A.2d 470; State v. Flores, 228 N.J. Super. at 591-92, 550 A.2d 752.
The State argues that, pursuant to R. 3:22-4, defendant is barred from presenting this claim on an application for post-conviction relief because he did not raise it upon direct appeal. The general rule is that an issue which could have been raised upon direct appeal will not be cognizable in a post-conviction proceeding, absent exceptional circumstances such as (a) the issue could not have been raised before, (b) barring the application would cause fundamental injustice, or (c) denial of relief would be a violation of the Federal or State Constitution. R. 3:22-4; State v. Cerbo, 78 N.J. 595, 605, 397 A.2d 671 (1979); see State v. Boyd, 165 N.J. Super. 304, 311, 398 A.2d 129 (App.Div. 1979), certif. denied, 85 N.J. 128, 425 A.2d 285 (1980). However, an illegal sentence may be corrected at any time. State v. Rhoda, 206 N.J. Super. 584, 593, 503 A.2d 364 (App. Div. 1986); State v. Paladino, 203 N.J. Super. 537, 549, 497 A.2d 562 (App.Div. 1985); State v. Heisler, 192 N.J. Super. 586, 592, 471 A.2d 805 (App.Div. 1984); State v. Sheppard, 125 N.J. Super. 332, 336, 310 A.2d 731 (App.Div.), certif. denied, 64 N.J. 318, 315 A.2d 407 (1973); State v. Strupp, 101 N.J. Super. 94, 98, 243 A.2d 272 (App.Div. 1968); State v. Boening, 63 N.J. Super. 588, 593, 165 A.2d 203 (App.Div. 1960). R. 3:22-12 specifically provides:

A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect. (Emphasis added).
This rule is a "corollary" to the rule that an "illegal" sentence, as opposed to an "excessive" sentence, may be challenged in post-conviction relief proceedings. State v. Flores, *156 supra, 228 N.J. Super. at 592, 550 A.2d 752. Thus, the rule that an "illegal" sentence may be corrected at any time is a "limited exception to the general rule [and] should be confined to cases in which the quantum of the sentence imposed is beyond the maximum provided by law or where the term set by the court is not authorized by any statutory provision." Id. at 595, 550 A.2d 752. But see State v. Ervin, 241 N.J. Super. 458, 464-65, 575 A.2d 491 (App.Div. 1989), certif. denied, 121 N.J. 634, 583 A.2d 328 (1990) (the illegality of the sentence considered, although the issue was not raised on a previous direct appeal, because the conditions of R. 3:22-4(a) and (b) were found to be met). Here, defendant claims that his indeterminate sentence was not authorized by N.J.S.A. 30:4-147, and, thus, this claim is cognizable in post-conviction relief proceedings although the issue could have been presented upon direct appeal.[2]
Turning to the principal issue, defendant contends that his sentence to the Youth Reception and Correction Center, Yardville, which is part of the Youth Correctional Institution Complex (see N.J.S.A. 30:4-146) was illegal because he previously *157 served a federal prison or penitentiary term. N.J.S.A. 30:4-147 provides as follows:
Any male person between the ages of 15 and 30 years, who has been convicted of a crime punishable by imprisonment in the State Prison, who has not previously been sentenced to a State Prison in this State, or in any other State, may be committed to the Youth Correctional Institution Complex. [Emphasis added].
In State v. Prewitt, 127 N.J. Super. 560, 564-65, 318 A.2d 427 (App.Div. 1974), we found that:
Only indeterminate terms may be given to the Youth Complex. Those who qualify for sentence there are male offenders between 15 and 30 years of age who have not previously been confined in the New Jersey State Prison or in a like institution of another state. N.J.S.A. 30:4-147; State v. Pallitto, 107 N.J. Super. 96 [257 A.2d 121] (App.Div. 1969), certif. denied, 55 N.J. 309 [261 A.2d 354] (1970).
Thus, we have concluded that "N.J.S.A. 30:4-147 ... provides that a defendant who has been sentenced to a state prison term cannot receive an indeterminate sentence." State v. Benedetto, 221 N.J. Super. 573, 577, 535 A.2d 525 (App.Div. 1987), certif. denied, 111 N.J. 559, 546 A.2d 491 (1988); see State v. DeVincenzo, 189 N.J. Super. 201, 205, 459 A.2d 710 (Law Div. 1983).
Barring a defendant previously sentenced to State Prison in this State or any other State from being sentenced to an indeterminate term at the Youth Correctional Complex is grounded on long-standing penological concerns. The primary purpose of a sentence to the Youth Reception and Correction Center is rehabilitation of the offender. State v. Carroll, 66 N.J. 558, 561, 334 A.2d 17 (1975). This purpose is highlighted in our discussion of N.J.S.A. 30:4-147's predecessor in State v. Pallitto, supra:
The purpose of this legislation was to restrict commitments to a reformatory to those who had not been previously sentenced to and confined in State Prison, so that the institution's rehabilitative function as a "reformatory" would not be obstructed by the presence of former State Prison inmates of the recidivist type. See Ex Parte Zienowicz, 12 N.J. Super. 563 [79 A.2d 912] (Cty.Ct. 1951); In re Nicholson, 69 N.J. Super. 230, 237 [174 A.2d 204] (App.Div. 1961); and Report of the Prison Inquiry Commission to the Governor and Legislature, January 1, 1918, where reference is made to "less hardened criminals." [107 N.J. Super. at 99, 257 A.2d 121].
*158 In State v. Hopson, 114 N.J. Super. 146, 275 A.2d 161 (App. Div. 1971), in a dissenting opinion adopted by the Supreme Court, 60 N.J. 1, 285 A.2d 225 (1971), Judge Halpern also noted that:
Unquestionably, the Legislature, for about 70 years has felt that [young offenders not previously confined to State prison] had a better chance to be rehabilitated under an indeterminate sentence and returned to society as a useful member thereof, than persons not in that category. In re Marlow, 75 N.J.L. 400 [68 A. 171] (S.Ct. 1907). [114 N.J. Super. at 151, 275 A.2d 161 (Halpern, J., dissenting)].
The facilities provided by the Youth Correctional Institution Complex are aimed "at directing the energies and ambitions of the youthful offender into proper channels." State v. Carroll, supra, 66 N.J. at 561-62, 334 A.2d 17. Youthful offenders not previously sentenced to a State Prison are sentenced to the Youth Correctional Institution Complex "in the hope that the associations there, being less contaminating than in State Prison, will, by suitable treatment and training, more likely foster rehabilitation. The theory is that placing the offender in a reformatory offers a better opportunity of social rehabilitation of the individual." State v. Horton, 45 N.J. Super. 44, 47-48, 131 A.2d 425 (App.Div. 1957). Thus, in light of the importance of this rehabilitative role, the limitation that only those offenders not previously sentenced to State Prison are eligible for indeterminate terms in the Youth Correctional Complex "legitimately creates a means for the separation therefrom of prisoners deemed unsuited or obstructive to such objectives." In re Zienowicz, supra, 12 N.J. Super. at 571-72, 79 A.2d 912.
The State urges strict construction of the language of N.J.S.A. 30:4-147. When construing a statute, a court must first look to the literal language of the statute. State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). "If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." Id.; accord, Dept. of Law & Public Safety v. Bigham, 119 N.J. 646, 650-51, 575 A.2d 868 (1990); State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989); Dempsey v. Mastropasqua, 242 N.J. Super. *159 234, 238, 576 A.2d 335 (App.Div. 1990); Prudential Property & Cas. v. Myers, 232 N.J. Super. 455, 457, 557 A.2d 686 (App.Div. 1989). Here, the literal language of the statute limits the imposition of an indeterminate term to the Youth Correctional Institution Complex to a youthful male offender "who has not previously been sentenced to a State Prison in this State, or in any other State...." N.J.S.A. 30:4-147 (emphasis added). Because the statute makes no reference to federal prison, the State contends that the statute should be interpreted as permitting defendant's sentence to an indeterminate term. Moreover, the State notes that N.J.S.A. 30:4-147 was amended in 1957, 1963 and 1970,[3] but the Legislature did not amend the statutory language to exclude persons previously sentenced to federal prison terms. In the State's view, had the Legislature intended to also exclude federal prisoners, it could have explicitly done so. See State v. Monaco, 166 N.J. Super. 435, 440, 400 A.2d 74 (App.Div. 1979); State v. Horton, supra, 45 N.J. Super. at 48, 131 A.2d 425.
The fact that N.J.S.A. 30:4-147 expressly mentions only State Prison, either in New Jersey or in another State, could be construed to exclude application to Federal prison pursuant to the maxim "expressio unius est exclusio alterius" (express mention of one thing implies exclusion of all others). See BLACK'S LAW DICTIONARY 521 (5th ed. 1979). However, as noted by the Supreme Court in Allstate Ins. Co. v. Malec, 104 N.J. 1, 8, 514 A.2d 832 (1986):
At best, this maxim is merely an aid in determining legislative intent, not a rule of law. See Esso Standard Oil Co. v. Holderman, 75 N.J. Super. 455 [183 A.2d *160 454] (App.Div. 1962), aff'd, 39 N.J. 355 [188 A.2d 599], appeal dismissed, 375 U.S. 43, 84 S.Ct. 148, 11 L.Ed.2d 107 (1963). Moreover, "great caution is necessary" in its application, Gangemi v. Berry, 25 N.J. 1, 11 [134 A.2d 1] (1957), for blind and mechanical application can often lead, as it did here, to an "improper interpretation" of the statute being construed. See, e.g., Errichetti v. Merlino, 188 N.J. Super. 309, 324 [457 A.2d 476] (Law Div. 1982).
A court need not always slavishly adhere to a literal reading of a statute. In Henry v. Shopper's World, 200 N.J. Super. 14, 18, 490 A.2d 320 (App.Div. 1985), we tempered the traditional rule requiring a literal construction of statutory language:
A statute must be interpreted sensibly, rather than literally, with the purpose and reason for the legislation being controlling.
See Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 160, 406 A.2d 140 (1979); Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959); Galanter v. Planning Bd. of Tp. of Howell, 211 N.J. Super. 218, 221, 511 A.2d 702 (App.Div. 1986); Baptist Home of South Jersey v. Bor. of Riverton, 201 N.J. Super. 226, 246, 492 A.2d 1100 (Law Div. 1984). Stated in another way, "strict construction does not require a rigid interpretation that does not serve the apparent legislative purpose, rather a statute is to receive a reasonable construction." New Brunswick v. Rutgers Community Health Plan, Inc., 7 N.J. Tax 491, 498 (1985) (citing Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956)). In the words of Justice Mountain:
In reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted. Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law. [N.J. Builders, Owners and Managers Association v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972)].
Courts must also recognize that "[o]ften, the surest path to misconstruction is a literal reading of a statute." Henry v. Shopper's World, supra, 200 N.J. Super. at 18, 490 A.2d 320; see Valerius v. Newark, 84 N.J. 591, 598, 423 A.2d 988 (1980); N.J.Bd. of Architects v. Armstrong, 89 N.J. Super. 358, 360, 215 A.2d 51 (App.Div. 1965). Absurd or unreasonable interpretations of a statute must be avoided. State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966).
*161 The strict construction proposed by the State would surely conflict with the penological concerns underlying the treatment of youthful offenders. As we noted above, the reason why persons who have previously been sentenced to "State Prison" are excluded from receiving indeterminate terms at the Youth Correctional Institution Complex is that such persons might interfere with or obstruct the rehabilitation of other youthful offenders. The need to separate youthful offenders from criminals previously sentenced to State Prison was demonstrated in State v. Pallitto, supra. In that case, defendant had been convicted of illegal possession of a narcotic drug and was sentenced to a term in the State Prison. However, this sentence was suspended and defendant was placed on probation. Thus, the defendant did not actually serve time in the State Prison. Later, defendant pleaded guilty to a violation of the conditions placed on his probation. The trial court sentenced the defendant to a indeterminate term with a two-year minimum at the forerunner of the Youth Reception and Correction Center, the Bordentown Reformatory, to be served concurrently with a term at the Essex County Penitentiary. Defendant claimed that his sentence was illegal because he had been previously sentenced to a term in the State Prison. Under a literal reading of N.J.S.A. 30:4-147, this interpretation would be correct. However, we pointed out the rehabilitative function of the reformatory and the concomitant need to exclude "former State Prison inmates of the recidivist type...." 107 N.J. Super. at 99, 257 A.2d 121, and explained that:
"The reason of the enactment prevails over the literal sense of terms * * * and the intention is to be taken or presumed according to what is consonant to reason and good discretion." State v. Spindel, 24 N.J. 395, 402-03 [132 A.2d 291] (1957). The statute in question uses the word "sentenced" to State Prison. Though defendant was theoretically "sentenced" to State Prison originally, that sentence was "suspended," so that he was never actually incarcerated therein and exposed to the potentially baleful influence of hardened criminals confined therein. [Id.]
Thus, we held that the trial court had properly committed the defendant to a reformatory, despite the literal language of the statute.
*162 In Pallitto, we departed from a literal reading of the statute in question in order to faithfully serve the underlying purpose behind its enactment  the rehabilitation of youthful offenders. Part and parcel of this goal is the need to separate youthful offenders from "former State Prisoners of the recidivist type." This need would apply with equal force to require exclusion of persons previously incarcerated in a federal prison or penitentiary because such persons would have been "exposed to the potentially baleful influence of hardened criminals confined therein." Pallitto, 107 N.J. Super. at 99, 257 A.2d 121. Therefore, as in Pallitto, we depart from a literal reading of N.J.S.A. 30:4-147 and hold that a person previously sentenced to and confined in a federal prison or penitentiary also cannot be sentenced to an indeterminate term at the Youth Correction Institution Complex, including the Youth Reception and Correction Center, Yardville.
Accordingly, the order under review is reversed and the matter is remanded to the trial court for resentencing. We do not retain jurisdiction.
NOTES
[1] The Youth Reception and Correction Center, Yardville, is now known as the Garden State Reception and Youth Correctional Facility (N.J.S.A. 30:1-7, as amended by L. 1987, c. 304, § 1, effective November 30, 1988).
[2] Although defendant has been released on parole, the State concedes that the pivotal issue raised by this appeal is not moot. The length of a defendant's lawful sentence and credit for time served will determine the duration of his parole. State v. Ryan, 171 N.J. Super. 427, 433-34 n. 1, 409 A.2d 821 (App.Div. 1979), rev'd on other grounds, aff'd as to this issue, 86 N.J. 1, 6-7 n. 3, 429 A.2d 332, cert. denied, 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). Moreover, even though a defendant has been released on parole, his claimed illegal sentence may still have "collateral consequences" since he would face reimprisonment should he violate his parole. United States v. Burton, 629 F.2d 975, 977 (4th Cir.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); see N.J.S.A. 30:4-123.60. Finally, of course, although free from prison confinement, the parolee's liberty is still restrained and he remains in legal custody. N.J.S.A. 30:4-123.59; see United States v. Brilliant, 274 F.2d 618, 620 (2d Cir.), cert. denied, 363 U.S. 806, 80 S.Ct. 1242, 4 L.Ed.2d 1149 (1960); Baier v. State, 197 Kan. 602, 419 P.2d 865 (1966); Annotation, Criminal Law  Moot Case, 9 A.L.R.3d 462 § 10[c], [d] (1966); and see generally, N.J.S.A. 30:4-123.45 to -123.69; N.J.A.C. 10A:71-1.1 to -8.7.
[3] The 1957 amendment to N.J.S.A. 30:4-147 substituted the phrase "a State Prison or reformatory in this State, or to a State Prison, reformatory or penitentiary in any other State" for "a state prison or a penitentiary in this or any other state."

The 1963 amendment deleted "or a reformatory" following "State Prison" and deleted "to a State Prison, reformatory or penitentiary" which preceded "in any other State."
The 1970 amendment replaced the term "reformatory" with "Youth Correctional Institution Complex".