STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
WARREN L. CLARK, DEFENDANT-APPELLANT.

Argued June 3, 1974—Decided July 30, 1974.

*Mr. Edward J. Dimon,* Assistant Deputy Public Defender, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Dimon,* of counsel and on the brief).

*Mr. Howard Allen Cohen,* Deputy Attorney General, argued the cause for plaintiff-respondent (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Cohen,* of counsel and on the brief).

The opinion of the Court was delivered by

HALL, J. Defendant in 1964, following guilty pleas, was committed for an indeterminate term for treatment under the sex offender act, *N. J. S. A.* 2A:164–3 *et seq.,* and given penal sentences consecutive thereto for other contemporaneous sex offenses, unquestionably resulting from the same mental and physical aberration, but not then included within the coverage of the act. He was paroled in 1971 from the com-

mitment under the act, *N. J. S. A.* 2A:164–8, following therapy treatment, as capable of making an acceptable social adjustment in the community and no longer a threat. He has since been serving the penal sentences. The question is the propriety of those sentences. It is raised by a *pro se* petition for post-conviction relief. *R.* 3:22. The trial court dismissed the petition without hearing and the Appellate Division affirmed. We granted defendant's *pro se* petition for certification, 63 *N. J.* 580 (1973), and directed the Public Defender to represent him in the resultant appeal.

The 1964 guilty pleas were to five accusations filed by the Prosecutor following defendant's waiver of indictment and trial by jury. He was at the time 37 years of age, married and the father of six children. The first accusation charged carnal abuse of a ten year old neighbor girl, *N. J. S. A.* 2A:138–1, which, by reason of the child being under the age of 12 years, carried a maximum sentence of 30 years. The second was for "incestuous conduct between parent and child," *N. J. S. A.* 2A:114–2, alleging that he "did unlawfully commit the crime of incest by having carnal knowledge of his * * *" nine year old daughter. The maximum penalty under this section is imprisonment for 15 years.[1] Two other accusations dealt with similar "unnatural" sex acts between defendant and two young males, one 16 and the other 19

[1]The record includes a physician's report of physical examinations of the two girls which establishes that carnal knowledge, *i. e.*, penetration (a requisite of the crime of incest, *State v. Masnik,* 125 *N. J. L.* 34 (E. & A. 1940)), did not occur in either case. Although technically defendant pleaded guilty to a crime which he did not commit, the record further shows that he admitted performing the same acts, amounting to carnal abuse, upon his own child as upon the neighbor girl. Such conduct comes within the language of *N. J. S. A.* 2A:114–2 as "an act of indecency towards, or tending to debauch the morals and manners of a child of such parent * * *" and carries the same maximum penalty as if carnal knowledge had occurred. It will be referred to as "incestuous conduct" even though that term is found only in the title of the section and not in the body.

years of age. Apparently because of the difference in age, the offenses were charged under differing statutory sections. That involving the 16 year old was brought under *N. J. S. A.* 2A:96-4 — contributing to a child's delinquency. (It has been held that "child" in this statute refers to a person under 18 years of age. *State v. Montalbo,* 33 *N. J. Super.* 462 (Co. Ct. 1954).) The charge concerning the 19 year old was "lewdness" under *N. J. S. A.* 2A:115-1.[2] Both charges are misdemeanors with a three year imprisonment maximum. *N. J. S. A.* 2A:85-7. (No violence was involved in any of these four charges.) The fifth accusation charged possession of obscene pictures (nude photographs he took of the two girls and others) with intent to utter and expose in violation of *N. J. S. A.* 2A:115-2, also a misdemeanor.

Upon the guilty pleas defendant was committed to the Diagnostic Center for physical and mental examination, required by the sex offender act since two of the offenses — carnal abuse and open lewdness — were within the then coverage of the act. *L.* 1950, *c.* 207, as amended by *L.* 1951, *c.* 44; *N. J. S. A.* 2A:164-3. The Center's report in fact dealt with all the offenses, which defendant readily admitted, and found that they derived from "deep psychosexual conflicts and deep feelings of male inadequacy" of long standing and that his offensive conduct was repetitive and compulsive and so fell within the purview of the act. He was said to be a menace to his family and other children and the recommendation was that he be committed to an institution for, as the statute (*N. J. S. A.* 2A:164-5) puts it, "a program of specialized treatment for his mental and physical aberrations." The recommendation being mandatory

---

[2]This section covers both "open" lewdness — in a public place — and lewdness "in private." The accusation does not indicate which was intended to be charged nor does the record establish whether the act was committed in public or in private. Apparently it has been treated throughout as a charge of open lewdness, so we will do likewise.

upon the trial court, defendant was committed, on August 20, 1964, to concurrent indeterminate terms for treatment on the carnal abuse and lewdness convictions covered by the act.[3] This resulted in possible detention for 30 years, the maximum imprisonment prescribed for carnal abuse, *N. J. S. A.* 2A:138–1, without credit for good behavior or work performed. *N. J. S. A.* 2A:164–6 and 10.

■ The purpose of the sex offender act is cure through treatment of the aberrations which caused the sexually deviant offenses rather than punishment. To that end the act provides for release under parole supervision "when it shall appear to the satisfaction of the state parole board, after recommendation by a special classification review board appointed by the state board of control of institutions and agencies, that such person is capable of making an acceptable social adjustment in the community." *N. J. S. A.* 2A:164–8. The converse is that if one so committed does not so respond to treatment and remains a menace to the community, he may be retained in confinement for the maximum term authorized for the crime of which he was convicted. See *State v. Wingler,* 25 *N. J.* 161, 175 (1957); *State v. Mickschutz,* 101 *N. J. Super.* 315, 320–321 (App. Div. 1968).

■ The trial judge, however, went beyond the commitment under the sex offender act and imposed penal sentences for the offenses not then within the coverage of the act — 10 to 15 years for incestuous conduct, 1 to 3 years for contributing to the delinquency of a minor and 1 to 3 years for possession of obscene pictures —, concurrent with each other, but consecutive to the sex offender commitment. This made for a maximum possible confinement of 45 years (less good time and work credits on the penal sentences). The

---

[3]The commitment was to Greystone Park State Hospital. Defendant was transferred to Rahway State Prison in 1965 and was received in the sex offender treatment unit there when that facility was completed in 1967.

propriety of the consecutive nature of these sentences is the issue before us.

Consideration of the issue is procedurally complicated because defendant did not appeal from the sentences[4] and did not raise the question in his first post-conviction relief petition. The chronology of pertinent events since the sentences must therefore be reviewed.

The first petition for post-conviction relief was filed, *pro se,* in 1966. It sought to set aside the pleas on the grounds that they had not been voluntarily entered and that he had not had the effective assistance of counsel at the time. The transfer from Greystone Park State Hospital to Rahway was also attacked. Counsel was assigned. The trial court denied relief and the Appellate Division affirmed on April 11, 1968. 105 *N. J. Super.* 381.

In the meantime the sex offender act was amended, by *L.* 1967, *c.* 274, approved January 11, 1968 and effective 30 days thereafter, to cover incest[5] (as well as private lewdness). After the decision of the Appellate Division, defendant filed a petition for certification to this court and a second petition for post-conviction relief, the latter on July 25, 1968. Both raised in essence the new question that the statutory amendment should be retroactively applied or that, in any event, defendant's sentence for incestuous conduct with his daughter consecutive to the sex offender commitment should, by reason of the policy prompting the amendment, be made concurrent therewith. We granted cer-

---

[4]Although defendant was represented at sentencing by assigned counsel (it was before the advent of the Public Defender), there is nothing in the record to indicate he was advised by either the judge or his counsel of the right to appeal from a sentence following a plea of guilty. The obligation of the court to advise a defendant of the right to appeal was not imposed until 1969 and did not extend to cases in which there is a plea of guilty until the rule, *R.* 3:21–4(e), was amended in 1971 to so provide.

[5]Counsel for the state concedes that "incest" in the amendment should be construed to also include other offenses between parent and child made criminal by *N. J. S. A.* 2A:114–2.

tification. 52 *N. J.* 500 (October 1, 1968). Sometime thereafter the trial court dismissed the second post-conviction relief without prejudice. It is our understanding that it did so because the question raised thereby was pending in this court and indicated that defendant might file a new petition if we did not pass upon the question. The question was argued before us,[6] but we did not pass upon it. We affirmed the Appellate Division for the reasons that tribunal expressed, thereby dealing only with the issues presented to it. 54 *N. J.* 25 (May 5, 1969).

As has been indicated, defendant underwent therapy treatment in the unit from 1967 on. By May 1971 he had progressed to the point where the unit staff concluded that "gains in all areas are more than sufficient for release to the community" and recommended parole as a sex offender. In view of the consecutive sentences to be served for the same type of offenses, the staff further recommended that he be allowed to serve those sentences in the unit rather than with the general prison population so he would not lose the effect of the therapy. The recommendation was adopted by the special classification review board and by the state parole board with the result that such parole was granted in the summer of 1971. Defendant has since remained in the unit and has continued to participate in the therapy program. He is, however, as far as release from confinement is concerned, no longer within the jurisdiction of the special classification review board, but rather exclusively within that of the state parole board.

The third and present petition for post-conviction relief was filed, *pro se,* in September 1971. Apparently it was intended to be in response to the indication of the trial judge, in dismissing the second petition without prejudice,

---

[6] At that oral argument the Assistant County Prosecutor, then representing the state, expressed the view that if defendant was cured of his basic sex problem, he should not be required to serve the consecutive penal sentences for the other sex crimes.

that a further petition questioning the consecutive penal sentences might be filed if this court did not pass on the issue, as we did not, on the appeal with respect to the second petition. While there was a considerable time lag between our 1969 decision and the filing of the third petition, we think it can fairly be attributed to defendant not having counsel during the period and to the fact that the penal sentences did not become a reality until the summer of 1971.

The petition asked that the penal sentences be made concurrent with the sex offender commitment on the ground that all of the offenses arose out of the same aberrations and that detention after these had been cured serves no useful purpose and in fact is repugnant to the philosophy and intent of the sex offender act. Immediate release was not sought. The trial court declined to assign counsel and denied relief without a hearing, holding principally that the imposition of concurrent or consecutive sentences is a matter for the discretion of the sentencing judge which would not be disturbed.[7] The affirmance of the Appellate Division in its unreported opinion was substantially for the reasons given by the trial judge.

To complete the chronology, reference should be made to events since we granted certification. (The record has been supplemented.) By early 1974 defendant had served the 1 to 3 year sentences for contributing to the delinquency of a minor and possession of obscene pictures and had become eligible for parole consideration on the 15 year maximum sentence for incestuous conduct (allowing good time and work credits). On March 26, the psychological consultant to the unit recommended to the state parole board that he be paroled from the penal sentences, noting "a favorable prognosis for community adjustment."[8]

---

[7] A different judge handled the matter on each occasion at the trial level.

[8] There had been some retrogression in defendant's psychological condition after he commenced serving the penal sentences due, we un-

The state parole board, however, on April 15 of this year denied parole and scheduled another parole hearing for one year later. It gave the following basic reason for its decision:

After consideration of the circumstances of your present offense, and in the absence of any statement by the sentencing court tending to indicate the contrary, the Board has concluded that there are certain punitive and deterrent aspects to your sentence. In the absence of any special or equitable circumstances or any affirmative evidence that you can avoid criminal behavior, and since your minimum sentence has not yet expired, the Board feels that the punitive and deterrent aspects of your sentence have not been fulfilled and that, therefore, your release would not be compatible with the community welfare.

After consideration of all records relevant to your confinement, treatment, and efforts towards self-improvement while in the N. J. State Prison system, the Board is unable to conclude that there is reasonable probability that you will return to society without violation of law.

Putting aside any procedural problems for the moment, we have no doubt that the consecutive penal sentences were plainly inappropriate in the circumstances. The scheme of our sex offender act, as previously indicated, is the specialized institutionalization of those sex deviants whose abnormal conduct has resulted in conviction for certain designated sexual crimes, is compulsive and repetitive, and either is accompanied by violence or is imposed upon a victim under 15 years of age. The inherent legislative finding underlying the act is that such persons are suffering from mental and physical illness involuntarily causing their conduct, for which criminal incarceration, whether thought of as punishment or as a deterrent, will accomplish nothing; the same conduct will be repeated after release. The further assumption has to be that, in many cases, they will respond to

derstand, to depression resulting from realization of the long period he could still be held in confinement. This has, however, been overcome by continuing therapy.

specialized treatment and can be restored to normal, law-abiding lives. So they are to be paroled under supervision as soon as they are found "capable of making an acceptable social adjustment in the community," but in those cases where treatment is not effective, they are to remain institutionalized for the protection of society for the maximum period for which they could have been criminally sentenced for the crime involved. See history of the act and discussion in *State v. Wingler, supra* (25 *N. J.* at 169–176); *State v. Lee*, 60 *N. J.* 53, 54–57, 58 (1972). The whole thesis is commitment for treatment instead of a sentence for punishment, to which the judiciary must give appropriate recognition and sympathetic effect. We must also have confidence that the staff of the sex offender treatment unit, the special classification review board and the state parole board will carry out their heavy responsibilities conscientiously and fairly so that, on the one hand, sex offenders will not be released to the community until there is a reasonable certainty that repetition of the conduct will not occur and, on the other, that a person is not detained longer than is necessary to accomplish that end.

In the case at hand, defendant's anti-social conduct, demonstrated by the five offenses to which he pleaded guilty, was all of a piece, resulting, as the Diagnostic Center report indicated, from the same causes and aberrations, even though not all of the offenses were then covered by the act. The long-time pattern of repetitive and compulsive behavior toward children and young males made it clear that defendant was ill, a menace and much in need of confinement and exposure to treatment. The prime difficulty with consecutive penal sentences for non-covered sex offenses is that they are absolute and must be served even though, as has proved to be the situation here, treatment is considered to have been so successful as to warrant release on parole otherwise. The sentences thus are purely punitive, relating to compulsive conduct having the same root cause which the Legislature

has said shall not be the subject of mere punishment.[10] We are convinced that they serve no useful purpose and are indeed contrary, under the circumstances present, to the .philosophy and purpose of the sex offender act. By the same token, we conceive them to be grossly unfair and unjust. to the defendant.[11]

 We therefore conclude that the penal sentences for the non-covered sex offenses should have been made concurrent with and not consecutive to the sex offender commitment and that they can and should now be declared so, which is the relief sought by defendant. We do so on the basis that the consecutive sentences were manifestly excessive in the circumstances.[12] The rule is, of course, fairly established that

---

[10]This becomes even more true here in the light of the 1967 amendment to the sex offender act bringing incestuous conduct, which was the subject of the 10 to 15 year consecutive sentence, within its coverage. It must be recalled that that conduct with defendant's daughter was exactly the same as constituted carnal abuse of the neighbor child which necessitated the 30 year maximum commitment under the act. If incestuous conduct had been within the act at the time of sentence and consecutive commitments had been ordered, they would have been aggregated and defendant would have been entitled to parole release as soon as treatment proved successful. *State v. Mickschutz, supra* (101 *N. J. Super.* 315).

[11]The only reason we can think of why the trial judge imposed these sentences was an effort to confine the defendant, if treatment were not successful, virtually for the balance of his life. We consider this objective to be improper under our act, which limits confinement to the maximum term prescribed for the sex offense committed, as distinct from statutes of other states allowing detention for life.

[12]While one might suggest that penal sentences for noncovered sex offenses consecutive to a sex offender commitment are so repugnant to the philosophy and purpose of the sex offender act as to be called illegal, we cannot envisage all possible circumstances and prefer to go no further than to say that such sentences should ordinarily be made concurrent with the commitment or perhaps even imposition thereof suspended. We fully appreciate that concurrency does pose the possible problem that sex offender treatment may be successful and a defendant ready for parole under the act before the date when he would ordinarily be paroled under the penal sentence for the noncovered offense. We presume, however, that the state parole board

mere excessiveness of sentence otherwise within authorized limits, as distinct from illegality by reason of being beyond or not in accordance with legal authorization, is not an appropriate ground of post-conviction relief and can only be raised on direct appeal from the conviction. *State v. Pierce,* 115 *N. J. Super.* 346 (App. Div. 1971), certif. den. 59 *N. J.* 362 (1971); *R.* 3:22–2(c). We have no intention of altering that rule, but it may be and has been relaxed in egregious circumstances. See *State v. Hicks,* 54 *N. J.* 390 (1969); cf. *State v. Johns, supra* (111 *N. J. Super.* at 576). Authority therefor may be found in *R.* 1:1–2 — "* * * any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice" — and in the safety valve provision now found in the post-conviction relief rule itself, *R.* 3:22–4, excepting from the bar of grounds for such relief raisable but not raised in prior proceedings a ground as to which "* * * enforcement of the bar would result in fundamental injustice."[13] For the reasons previously given, we conceive this

would prevent any undesirable detention under the latter sentence in its parole consideration thereof.

We ought also to say that we reject defendant's contention that the consecutive penal sentence for incestuous conduct is illegal because the 1967 amendment to the act, bringing that offense within its coverage, should be retroactively applied. To do so would raise a serious question of unconstitutional *ex post facto* application of the amendment, see *State v. Johns,* 111 *N. J. Super.* 574 (App. Div. 1970), certif. den. 60 *N. J.* 467 (1972), *cert.* den. 409 *U. S.* 1026, 34 *L. Ed.* 2d 319 (1972), as well as the matter of whether the Legislature even so intended.

[13]The post-conviction relief rule as originally adopted in 1963, *R. R.* 3:10A–4, excepted from the bar a ground of relief when "* * * a denial of relief on said account would be contrary to fundamental justice or to the Constitution of New Jersey." This wording was held to encompass only denial of fundamental justice in the constitutional sense of denial of due process of law. See *State v. Trantino,* 60 *N. J.* 176, 180 (1972). In the rule revision of 1969, however, fundamental injustice and constitutional violation were placed in separate categories. *R.* 3:22–4(b) and (c). This treatment permits consideration of a claim of sufficiently gross fundamental injustice even though it could have been raised in some earlier proceeding.

to be a proper case for relaxation. And, of course, this court has full power to correct an excessive sentence. *R.* 2:10–3; *State v. Laws*, 51 *N. J.* 494, 509–510 (1968), *cert.* den. 393 *U. S.* 971, 21 *L. Ed.* 2d 384 (1968).

Although the state parole board's denial of parole in April 1974 is technically not before us for review, the record has been supplemented to include it and the assigned reasons therefor and we should speak about it. The basic reason given, earlier quoted in full, that "* * * the punitive and deterrent aspects of your sentence have not been fulfilled" no longer has any relevancy in view of our decision that the penal sentences are to be concurrent with and not consecutive to the sex offender commitment. The further reason that "* * * the Board is unable to conclude that there is reasonable probability that you will return to society without violation of law" is open to serious question in view of the March recommendation of the psychological consultant to the sex offender treatment unit. The parole board should hold another parole consideration hearing as soon as possible and redetermine the matter of parole in the light of this opinion.

The judgments of the Appellate Division and the Morris County Court dismissing the third petition for post-conviction relief are reversed and the cause is remanded to the latter tribunal for the entry of a judgment directing that defendant's penal sentences shall be concurrent and not consecutive to the sex offender act commitment.

*For reversal and remandment*—Justices JACOBS, HALL, MOUNTAIN, SULLIVAN and CLIFFORD—5.

*For affirmance*—None.