STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES
F. JOHNSON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Resentencing Panel

Decided June 12, 1981.

Before Judges COLEMAN, MARZULLI and YANOFF.

*Susan Green,* Assistant Public Defender, for defendant-appellant (*Stanley C. Van Ness,* Public Defender, attorney).

*Marc J. Friedman,* Deputy Attorney General, for plaintiff-respondent (*James R. Zazzali,* Attorney General, attorney).

The opinion of the court was delivered by

YANOFF, J. S. C. (retired and temporarily assigned on recall).

The only issue before us is a factual determination as to "good cause" under *N.J.S.A.* 2C:1–1 d(2). We understand our dissenting colleague and the Appellate Division take the view that we resentenced for disparity alone. Our review of the record indicates the contrary; we relied on a complex of facts, especially Johnson's record at the Adult Diagnostic Treatment Center (ADTC).

In 1962 Johnson was sentenced under a plea agreement on four charges: rape, and three separate charges of assault with intent to rape. He was determined to be a compulsive and repetitive sex offender, pursuant to the Sex Offender Act (*N.J. S.A.* 2A:164–3), and received an indeterminate sentence of 30 years for the rape and three indeterminate 12-year terms for the assaults with intent to rape, all consecutive. His aggregate sentence was thus 66 years, indeterminate.

He was paroled in 1974. While on parole he was charged with impairing the morals of a minor, in violation of *N.J.S.A.* 2A:96–3, and abduction, in violation of *N.J.S.A.* 2A:86–3. By agreement, he pled guilty to the morals charge and received an indeterminate three-year sentence, consecutive to the previous sentences, thereby increasing the indeterminate term to 69 years.

According to defendant, he made advances to a 12-year-old girl, believing her to be a prostitute, and when she rebuffed him, put his arms around her and began kissing her.

In 1979 Johnson applied for post-conviction relief as to the three 12-year terms. In consequence, the sentences on these were made concurrent to each other and the 30-year term, consecutive, so that there was a reduction to an indeterminate 33 years, of which three were on the morals charge. No appeal was taken. The result is one of the facts upon which we must base our findings. We are not free to determine whether the post-conviction relief decision was wrong, or to act as if the reduction of sentence had not occurred, or to say that because Johnson has committed four sex offenses he cannot possibly obtain relief under *N.J.S.A.* 2C:1–1 d(2).

█ Johnson was sentenced to an indeterminate term as a sex offender under *N.J.S.A.* 2A:164–3, for the purpose of treatment and cure. The premise of the statute is that he is suffering from an "aberation" which can be cured. He is to be released when he is "capable of making an acceptable social adjustment in the community" (*N.J.S.A.* 2A:164–8), apparently cured from

his aberration. He is at ADTC, not for punishment but for treatment. *State v. Wingler*, 25 *N.J.* 161, 182 (1957) (dissenting opinion). *State v. Clark*, 65 *N.J.* 426 (1974), iterates the same principle. It was there held that a penal term for a sex offense consecutive to an indeterminate term at ADTC was improper. Justice Hall said:

> The prime difficulty with consecutive penal sentences for non-covered sex offenses is that they are absolute and must be served even though, as has proved to be the situation here, treatment is considered to have been so successful as to warrant release on parole otherwise. [at 435]

The 2C technique for dealing with sex offenders is different from that which prevailed before September 1, 1979. Now a sex offender, like any other defendant, must be given a definite sentence under chapters 43 and 44 of the Code of Criminal Justice. *N.J.S.A.*2C:47–3 b. This means that in a proper case he can receive a mandatory minimum sentence (*N.J.S.A.* 2C:43–6), or an extended term (*N.J.S.A.* 2C:43–7). But, as before, he "shall be released under parole supervision when it shall appear . . . that such person is capable of making an acceptable social adjustment in the community. . . ." *N.J.S.A.* 2C:47–5. The Code recognized that the Sex Offender Act has not been repealed, and that the object of confining a compulsive and repetitive sex offender to ADTC is therapeutic, not punitive. That is why our dissenting colleague's observations about Johnson's prior record are inappropriate. Johnson is receiving therapy. True, it is forced therapy, but under our sex offender program he is to be treated, not punished. For better or worse, by our law he is not being chastised. To bring up his prior record and say that he is a bad man and should be made to suffer for it, under the circumstances, is simply a *non-sequitur.* The decision that he should receive therapy was made in 1962; after almost 20 years, this is not the time to punish him.

Our dissenting colleague says that "The probabilities are that he continues to be a risk." *ante* at 11. We note this is an opinion which the staff at ADTC does not share.

■ Nor are we free to disregard Johnson's record at the ADTC. If the findings there may be used to deny relief (*State v. Rothfeld*, 170 *N.J.Super.* 514 (Law Div.1979); *State v. Von Graevenitz*, 176 *N.J.Super.* 210, 214 (App.Div.1980), they should be equally available when they are helpful to an applicant.

The ADTC report of March 6, 1979 states:

On his present incarceration certain difficulties have occurred. Mr. Johnson has consistently demonstrated good understanding of his previous raping pattern, leading this therapist and the Treatment Staff to the conclusion that he needs no further work in this area. However, he has steadfastly maintained his innocense [*sic*] in his present IMM offense and sought legal remedies although he has been stymied in his appeal attempts. His motivation has suffered due to his perception that he cannot be released if he does not admit to an offense that he denies.

The report of July 27, 1979, reads:

On his present incarceration certain difficulties have occurred. Mr. Johnson has consistently demonstrated good understanding of his previous raping pattern, leading this therapist and the Treatment Staff to the conclusion that he needs to further work in this area. However, he has steadfastly maintained his innocense [*sic*] in his present IMM offense and sought legal remedies, although he has been stymied in his appeal attempts. His motivation has suffered due to his perception that he cannot be released if he does not admit to an offense that he denies, and yet, due to the length of his backup time, he will remain in prison indefinitely.

The report of January 14, 1980 states:

Approximately one year ago, the Staff considered this problem and recommended that Mr. Johnson be cell paroled from his 66 year backup time to his 3 year IMM sentence. The rationale was that he had sufficient insight and maturity necessary to deal with his past dynamics as a rapist, although the Staff was not convinced that he did not commit the IMM offense to which he pled guilty. The SCRB at that time did not concur with this recommendation, but referred Mr. Johnson back to the Staff until that time when the Staff felt ready to recommend parole on both sentences. Mr. Johnson has maintained his involvement in therapy. However, at this time there does not appear to be any change in Mr. Johnson's legal predicament or the dilemma of the Staff.

Thus, there are three bases for a finding of "good cause." First, disparity of sentence. The congruent offense for the rape charge is *N.J.S.A.* 2C:14–2, aggravated sexual assault, a first-degree offense, which carries a 20-year maximum. This is two-thirds of the 30-year sentence. The Panel determined that the equivalent offense for impairing the morals of a minor was *N.J.S.A.* 2C:24–4, a fourth-degree offense, with an 18-month

maximum. The Appellate Division did not decide whether this determination was correct. *State v. Johnson*, 176 *N.J.Super.* 1, 4 (1981). A violation of *N.J.S.A.* 2C:24–4 is not one of the crimes for which an offender under the Code may be referred to the ADTC. *N.J.S.A.* 2C:47–1. The disparity in sentence as to the morals charge, therefore, consists not merely in a term twice as long as the Code term, but in the fact that Johnson is being held on a sentence which cannot be reduced by "good time." *Savad v. Corrections Dep't,* 178 *N.J.Super.* 386 (App.Div.1981). Second, that as to his entire sentence of 33 years, Johnson cannot earn "good time." *Savad, supra.* Third, the fact that staff at ADTC has concluded that Johnson is a good risk for return to the community, except for the fact that for some reason he refuses to admit his guilt on the morals charge. Why this is so, we do not know. It may be that he falsely admitted his guilt at the plea hearing. It may be that he is convinced the girl was a prostitute and that in a moral sense he was not guilty. It is possible that something within him keeps him from making this obeisance as the price for release. But this failure to utter the magic words is unimportant when contrasted with his over-all good adjustment.

Johnson is now almost 57 years old. He has been in ADTC for over 18 years. This, too, is a fact which, in conjunction with the enumerated items, leads us to conclude there is "good cause."

Judge MARZULLI concurs in this opinion.

COLEMAN, J. S. C. (dissenting).

By order of the Supreme Court this case was remanded to us to articulate the reasons supporting "good cause", as required by *N.J.S.A.* 2C:1–1(d)(2) for changing defendant's sentences. I interpret this order to permit an articulation of reasons militating against good cause as well. Since I do not concur in the opinion of the majority in its attempts to articulate good cause, I must dissent. A brief summary of the procedural history is necessary to a clearer understanding of the reasons why I have dissented.

On April 11, 1962 defendant was sentenced pursuant to a plea agreement on the following charges: Accusation 1034–61—to an indeterminate term at Trenton State Hospital of not more than 30 years for rape; Accusation 1035–61—an indeterminate term at Trenton State Hospital of not more than 12 years for assault with intent to rape, to run consecutive to the sentence imposed on Accusation 1034–61; Accusation 1036–61—an indeterminate term at Trenton State Hospital of not more than 12 years for assault with intent to rape to run consecutive to the sentence imposed on Accusation 1035–61; Accusation 1041–61—an indeterminate term at Trenton State Hospital of not more than 12 years for assault with intent to rape to run consecutive with the sentence imposed on Accusation 1036–61. The aggregate sentence imposed was 66 years to Trenton State Hospital.

Defendant was institutionalized as a sex offender until April 11, 1974, when he was paroled. However, on January 23, 1975 defendant was arrested and charged with impairing the morals of a 12-year-old girl. On February 25, 1975 defendant was returned to the institution as a parole violator. On March 15, 1976 defendant was sentenced pursuant to a plea agreement to a term of three years to the Diagnostic Unit at Rahway State Prison on the charge of impairing the morals of a minor which led to his parole violation. The said three-year term was made to run consecutive to the 66-year term. On May 21, 1979 defendant filed a petition for post-conviction relief based upon *State v. Clark*, 65 *N.J.* 426 (1974). Judge Dios ordered the consecutive sentences imposed on the foregoing accusations modified to run concurrently with each other, thus reducing the sentence to 30 years plus three years consecutive for impairing the morals of a minor.

On March 14, 1980 the Resentencing Panel determined that the defendant had shown good cause to have his sentence changed. Accordingly, the 30-year term on Accusation 1034–61 was reduced to 20 years after finding that the offense constituted a first degree crime. The Panel further concluded that the charge under Indictment 977–74 had a congruency under *N.J.*

*S.A.* 2C:24–4 a of endangering the welfare of a child, which carried a maximum sentence of 18 months. This was not an offense subjecting defendant to a sex offender sentence under *N.J.S.A.* 2C:47–1. He was given a suspended sentence on this charge. Thus, the Resentencing Panel reduced the defendant's sentence from 33 years to 20 years.

I have carefully re-examined the record and have considered the arguments advanced by defendant and the State. I am persuaded that no good cause ever existed to change the 33 year sentence within the contemplation of *N.J.S.A.* 2C:1–1(d)(2). The earlier decision concluded there was good cause based upon disparity in sentence alone. Upon more careful examination and reflection, disparity did not exist, let alone good cause. Disparity cannot be evaluated in a vacuum, it must be considered in the overall context of the existing law, the facts and circumstances of the offense, the characteristics of defendant, defendant's social background, and any other proper sentencing criteria established under *N.J.S.A.* 2C:44–1 a and b. The focus should not be myopically concentrated upon the narrow aspect of defendant's life since 1976.

If there is a case in which good cause can be satisfied by a mere showing of disparity, this is not such a case. We must consider the offender and the offenses. An understanding of the offense that formed the basis of Accusation 1034–61 will be helpful. Since the files of both the Prosecutor and the Essex County Clerk on these accusations have been lost, I must rely upon other sources. The 35th overall consideration by the Adult Diagnostic and Treatment Center, dated July 27, 1979, describes these offenses as follows:

> Mr. Johnson's original rape and assault and battery charge with intent to rape charges stemmed from a series of incidents in which he broke into elderly womens' homes in the early morning hours and raped them, in one case raping a 91 year old woman and in another case, attempting to rape a nun. On one occasion he bit a woman's tongue when she resisted. These offenses took place between November 12, 1961 and January 2, 1962.

The offense that occurred on January 29, 1975 involved a 12-year-old female child. Defendant propositioned her by offer-

ing her money to have sex with him. He attempted to kiss her and put his arm around her, as well as place his hand over her mouth to prevent her from screaming for help. He did not touch her intimate private parts.

The aggravating and mitigating factors must be considered when determining the issue of good cause. *N.J.S.A.* 2C:44–1 a and b. The nature of the offenses and the manner in which they were committed have been previously discussed. We now consider defendant's past criminal record. He was not crime-free for even six months while on the streets from 1941 through 1974. His first offense occurred as a juvenile in February 1941. The charge was robbery while armed with a firearm, and he was sentenced to 10 to 15 years and released in February 1948. On July 2, 1948 he was charged with burglary and sentenced to two to three years in State Prison and released on January 8, 1950. On February 28, 1950 he was charged with assault and battery and sentenced to three to five years and had to "max out." On March 16, 1955 he was charged with burglary and larceny as well as assault with intent to steal, and sentenced to five to seven years and released on August 25, 1959. On November 19, 1959 he was charged with entry with intent to steal and sentenced to two to three years and discharged on October 15, 1961. On December 7, 1961 he was charged with loitering and was sentenced to time served. On January 2, 1962 he was charged with those offenses previously enumerated in the four accusations. He was paroled on April 11, 1974 and violated parole on January 29, 1975 for impairing the morals of a minor.

Next we consider the course of therapy while confined as a sex offender. A report of the Adult Diagnostic and Treatment Center for an examination that occurred on January 19, 1976 reveals:

He was examined at the Diagnostic Center Out-Patient Department under the New Jersey Sex Offender Act on March 22, 1962; he was diagnosed as schizophrenic reaction, paranoid type.

Another report from the Adult Diagnostic and Treatment Center dated January 14, 1980 states:

During his present incarceration certain difficulties have occurred. Mr. Johnson has consistently demonstrated good understanding of his previous raping pattern, leading this Staff to the conclusion that he needs no further work in this area. However, he has steadfastly maintained his innocence on his present IMM offense, and sought legal remedies, although he has been stymied in his appeal attempts. His motivation has suffered due to his perception that he cannot be released if he does not admit to an offense that he denies, and yet, due to the length of his backup time he would otherwise remain in prison indefinitely. Approximately one year ago, the Staff considered this problem and recommended that Mr. Johnson be cell paroled from his 66 year backup time to his 3 year IMM sentence. The rationale was that he had sufficient insight and maturity necessary to deal with his past dynamics as a rapist, although the Staff was not convinced that he did not commit the IMM offense to which he pled guilty. The SCRB at that time did not concur with this recommendation, but referred Mr. Johnson back to the Staff until that time when the Staff felt ready to recommend parole on both sentences.

Mr. Johnson has maintained his involvement in therapy. However, at this time there does not appear to be any change in Mr. Johnson's legal predicament or the dilemma of the Staff.

The 91-year-old rape victim was particularly vulnerable and incapable of resistance due to advanced age. There is a substantial likelihood that defendant will commit other offenses soon after his release as he has done in the past. Under *State v. Clark, supra,*[1] defendant ended up with an indeterminate 30-year sentence for a rape and three assaults with intent to rape. Thus the 30-year sentence was not even disparate because four crimes were committed and covered by the 30 year sentence. Also, defendant was eligible for an extended term on the rape pursuant to *N.J.S.A.* 2C:44–1 a as a persistent offender. Whether an extended term is imposable should be considered in determining disparity between 2A and 2C offenses. *State v. Maguire*, 84 *N.J.* 508 (1980). For the rape alone defendant was exposed to a term of 20 years to life. See *N.J.S.A.* 2C:43–7 a(2). This means that not only was there no disparity, but the threshold requirement of *N.J.S.A.* 2C:1–1(d)(2) was not established. Additionally, defendant would not even be incarcerated

---

[1] I express no opinion on whether *Clark* is applicable to a sentence under the Code since the legislative intent may have been changed by the Code. Also, *Clark* may not have been applicable to the instant case. *See* 65 *N.J.* at 436, n. 10 and *State v. Mickschutz,* 101 *N.J.Super.* 315 (App.Div.1968).

at this time, and there would have been no need for his application had he not committed the offense of impairing the morals of a minor after being released on parole from the rape sentence. Furthermore, defendant has been unable to demonstrate a single mitigating factor. The probabilities are that he continues to be a risk.

It must also be remembered that the original sentence of 66 years was imposed pursuant to a plea agreement. Where a court has already reduced the sentence by more than 50% in a case that cries out for long-term institutional care, the earlier reduction strongly militates against any further reduction.

Under the facts of this case I am unable to articulate any factors constituting good cause because none existed to change the sentences. I mistakenly joined in the resentencing of defendant while laboring under the misconception that disparity existed and disparity alone constituted good cause. I now have the courage to say I was wrong. Accordingly, this dissent is filed.