**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1734-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ORLANDO MATOS, a/k/a
JOSE APONTE, BEBO
MATOS, and ORLANDO
MATOS-LUGUS,

     Defendant-Appellant.

_____

Submitted November 20, 2024 – Decided February 6, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-03-0386.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Louis H. Miron, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Steven K. Cuttonaro, Deputy Attorney General, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant, Orlando Matos, presently serving a sentence after conviction of a 2016 armed robbery and related offenses, appeals from the December 5, 2022 Law Division order denying, without an evidentiary hearing, his application for post-conviction relief (PCR) alleging ineffective assistance of trial and appellate counsel. Because defendant failed to establish a prima facie claim for relief under Strickland v. Washington, 466 U.S. 668, 687 (1984), we affirm for substantially the same reasons set forth by Judge Pedro J. Jimenez, Jr. in his comprehensive written decision.

I.

We distill the following relevant facts and procedural history from our decision on direct appeal, State v. Matos, No. A-1337-18 (App. Div. Dec. 15, 2020), and the record.

A.

In 2017, a grand jury returned an indictment charging defendant with second-degree conspiracy, N.J.S.A. 2C:5-2, first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2), fourth-degree possession of an imitation firearm, N.J.S.A. 2C:39-4(e), and third-degree terroristic threats, N.J.S.A. 2C:12-3(b).

After trial before Judge Jimenez and a jury in 2018, defendant was convicted of all but the terroristic threats charge and sentenced to an extended term of twenty-five years' incarceration with an eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA).[1]

Twelve witnesses testified at trial, including the victims, law enforcement officers involved in the subsequent investigation, and co-defendant, Efrain Fernandez, who implicated defendant after already pleading guilty in exchange for a favorable sentence. DNA expert testimony also linked defendant to a hat worn by one of the robbery suspects. Store surveillance footage depicting the robbery and video from neighboring cameras capturing the events prior to and after the crime were played for the jury.

We previously summarized the trial testimony regarding the offense on direct appeal:

> On the day of these events, Sanjay and Priti Kaple were working in their store—a mini market. A store patron, Mariano Soto, was sitting near the front counter. Two men entered the store. The first man, later identified as defendant, was wearing a red baseball hat underneath a blue hoodie with white lettering that covered his face. The second man, identified as co-defendant Efrain

---

[1] The judge merged the firearm charge into the armed robbery imposing twenty-five years, subject to NERA, to be served concurrently with seven years for conspiracy.

Fernandez, was wearing a black baseball hat and a black hooded jacket that covered his face.

Sanjay testified that defendant approached Soto and pointed a small black gun [later found to be fake] at Soto's face and chest and demanded money. After Soto told defendant he did not have any money, defendant approached Sanjay and told him to open the cash register. After a brief struggle, defendant ripped a gold chain necklace from Sanjay's neck.

. . . .

In the meantime, Fernandez approached Priti from behind, and demanded she give him her gold chain necklace. When she refused, he tore it off her neck. Priti fell to the ground. Fernandez then walked toward the front entrance of the store and told defendant that they should leave. Throughout this time, defendant continued to point the gun at the Kaples.

After defendant tore off Sanjay's necklace, he approached the cash register and unsuccessfully attempted to open it. While defendant was distracted with the register, Sanjay ran toward the door and pushed Fernandez out of the store and onto the street where a struggle ensued. Priti ran after Sanjay out of the store. Defendant then ran after them.

During the struggle, Sanjay and Priti tore off Fernandez's hoodie and hat. They immediately recognized him as a frequent patron of their store but did not know his name. Because they could not see defendant's face, they were unable to identify him.

As defendant and Fernandez ran to a waiting car driven by a third man, co-defendant Yorvin Caba-Placencia, Fernandez left his hoodie and hat behind.

4

Sanjay chased after the men and saw them get into the car. He was able to note a partial license plate.

[Matos, slip op. at 2-4 (footnote omitted).]

After reviewing surveillance video, police located the getaway car driven by Caba-Placencia, who consented to a search that revealed a red hat with white lettering in the back seat, matching the hat worn by one of the suspects depicted in the surveillance video of the robbery. Police eventually arrested Fernandez who cooperated, providing information that defendant and he planned and committed the actual store robbery and Caba-Placencia drove the vehicle to and from the store.

Fernandez testified at trial he told defendant he needed money and defendant agreed "to help," and the two discussed the robbery in advance. Fernandez identified defendant as the man wearing the red hat in the robbery video as well as the person seen in surveillance footage entering the store and fleeing with Fernandez from the scene.

DNA testing revealed "extremely strong support" for a match from the red hat to defendant only, and equally strong support for a match from the black hat to both defendant and Fernandez, and a match on the black jacket to Fernandez only. Police testimony recounted that the red hat was initially placed in an evidence bag and stored in a locked desk drawer before being later logged into

5

evidence.  The chain of custody was explored on direct and cross-examination, and the red hat was admitted into evidence despite objection by defendant's counsel.

The jury was instructed regarding the relevant law including that of armed robbery and conspiracy, but the court did not provide a charge on accomplice liability, nor was such an instruction requested by either defendant or the State. Following defendant's conviction and sentence, he appealed, raising trial and sentencing errors.

B.

We affirmed defendant's conviction and sentence on direct appeal. Defendant unsuccessfully argued:  (1) the trial court failed to consider theft as an alternative to robbery; (2) the trial court failed to caution jurors about the testimony regarding "unrecorded oral remarks" allegedly made by defendant leading to the conclusion defendant conspired to commit theft with Fernandez; (3) the State improperly presented Fernandez's unreliable testimony in violation of defendant's due process rights; and (4) the court's extended term sentence was manifestly excessive, and the court erred in "failing to find any mitigating factors." Matos, slip op. at 11, 24.  We found:  (1) the theft charge was neither required nor requested by defendant, id. at 14-17; (2) the error, if any, in the

6

jury charge regarding defendant's out of court statements to Fernandez "did not have the capacity to produce an unjust result because defense counsel contested the reliability of defendant's statement to Fernandez and there was other evidence . . . that clearly established defendant's guilt," id. at 21; (3) any unreliability related to Fernandez's testimony was explored by trial counsel who "highlight[ed] Fernandez's prior inconsistent statements to police," id. at 23; and (4) the sentence was not excessive and the trial court's finding and balancing of the sentencing factors was supported by the record, id. at 26-27.

## C.

In August 2021, defendant filed a pro se petition for PCR alleging ineffective assistance of trial counsel, claiming (1) trial counsel did not properly investigate his case, including an available alibi witness and his claim that police placed the red cap on his head after his arrest in order to gain his DNA, (2) trial counsel failed to "re-test[] the hat for DNA" or move to suppress the red hat from evidence; (3) counsel failed to request and the court failed to charge the jury on accomplice liability; (4) counsel failed to properly cross-examine witnesses and the trial judge improperly curtailed inquiry of the cooperating co-defendant; (5) a testifying police officer improperly identified defendant in a surveillance video; (6) trial counsel failed to object to chain of custody for the

7

red hat or advocate to exclude the DNA evidence; and (7) trial counsel failed to advise defendant prior to trial regarding his extended term sentencing eligibility or raise applicable mitigating factors at sentencing.

PCR counsel thereafter filed a brief raising trial counsel's ineffective assistance, claiming: (1) trial counsel failed to file a motion to suppress the red hat from evidence; (2) counsel failed to properly advise defendant of his extended term sentencing exposure; (3) counsel failed to adequately investigate the circumstances surrounding DNA sample or testing results, challenge the admissibility of the hat or the DNA, or pursue defendant's alibi witness; and (4) counsel failed to adequately cross-examine witnesses. The brief also asserted appellate counsel was ineffective for failing to raise on appeal the court's alleged errors in failing to instruct the jury on accomplice liability and in improperly curtailing defendant's cross-examination of Fernandez regarding prior offenses that did not result in convictions. Neither defendant nor PCR counsel provided any supporting certifications or statements from witnesses in furtherance of defendant's alibi claims.

After argument, Judge Jimenez denied defendant's motion for PCR in a written decision and accompanying order.

First, the judge found trial counsel was not ineffective "for failing to file a motion to suppress the evidence[, namely the red hat,] seized during the search of [Caba-Placencia]'s vehicle." The judge reviewed the record and found the circumstances surrounding the stop and consent search were "certainly appropriate and likely why neither counsel moved to suppress the evidence contained therein."

Next, the judge found trial counsel was not deficient "for not requesting a hearing to suppress the surveillance video," as defendant "offer[ed] nothing but unsubstantiated allegations that are contrary to the trial record." He further emphasized the "testimony from various law enforcement witnesses regarding the surveillance video and how they came to possess it" rendered any potential motion to suppress "frivolous."

The judge similarly rejected defendant's claims that "he was never advised of his extended term sentencing exposure as a 'persistent offender'" and counsel rendered him uninformed "concerning his choice for trial in lieu of accepting the State's plea offer." The court referenced and found the pretrial record belied defendant's claims, including the pretrial memo outlining the potential sentence and persistent offender eligibility as well as multiple "conferences . . . held in court with [defendant] being advised of his sentencing exposure each time and

9

the effect his prior history would have on same." Accordingly, the court found no validity to defendant's unsupported claim.

Likewise, addressing defendant's assertion that trial counsel failed to investigate an alibi witness or re-test DNA evidence, Judge Jimenez found defendant's claims were "bald assertions" as defendant failed to set forth prima facie evidence of a viable claim of ineffective assistance. The court found defendant made only unsubstantiated alibi assertions that he was with his sister-in-law at the time of the robbery, and, regardless, deemed further exploration of the speculative alibi "pointless." The judge specifically found defendant could not make a showing of prejudice given the weighty and contradictory trial evidence, including video linking defendant to the crime scene, strong DNA expert testimony, and Fernandez's testimony implicating defendant and identifying him in the videos.

Regarding defendant's claims that counsel failed to properly challenge the DNA evidence, the court found defendant's claims were not supported by the record and deemed the failure to "re-test" the DNA evidence to be counsel's sound trial strategy given the State's virtually "irrefutable" evidence. The court highlighted trial counsel's objection to admission of the red hat into evidence

10

and cross-examination of police witnesses regarding the handling of the evidence.

Concerning what the judge characterized as defendant's "dissatisfaction" with trial counsel's handling of witness examinations, the judge similarly found counsel's performance "[did] not rise to a level making . . . [trial] counsel's strategy inconsistent with the broad discretion" afforded to trial counsel in examining witnesses. Nonetheless, the court found counsel's performance belied defendant's claims as "trial counsel vigorously cross-examined witnesses." In particular, the court found trial counsel, co-defendant's counsel, and the State highlighted for the jury Fernandez's favorable plea agreement to testify against defendant to benefit his sentence. Considering defendant's certification accompanying his petition, the court found defendant "offer[ed] no evidence of counsel misconduct beyond a bare assertion . . . contradicted by the trial record."

In considering defendant's assertions that appellate counsel failed to raise viable claims on direct appeal, the judge rejected any argument that counsel on appeal was deficient for electing not to challenge the trial court's failure to provide an accomplice liability instruction. The judge found the State charged

11

and pursued its case against defendant as a principal, "premised on the factual basis provided by . . . [F]ernandez."

The court also denied defendant's claim that appellate counsel failed to raise the trial court's improperly curtailing trial counsel's cross-examination of Fernandez "concerning his prior crimes," finding the trial record showed extensive focus throughout the trial on Fernandez's agreement to testify in exchange for a favorable sentence. The judge held defendant failed to show that any different approach to discrediting Fernandez would have altered the outcome.

Accordingly, Judge Jimenez declined to grant defendant an evidentiary hearing on any issue and denied defendant's petition in its entirety as failing to meet either prong of Strickland for ineffective assistance of counsel.

II.

On appeal, defense counsel raises the following arguments:

> POINT I
>
> THE PCR COURT ERRED IN RULING THAT DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF COMPETENT TRIAL COUNSEL WHERE COUNSEL FAILED TO INVESTIGATE DEFENDANT'S ALIBI WITNESS AND TO CALL THE ALIBI WITNESS WHO WOULD HAVE ESTABLISHED THAT DEFENDANT WAS NOT AT THE SCENE OF THE ROBBERY BECAUSE HE

WAS AT A PARTY AT THE HOME OF THE ALIBI
WITNESS

POINT II

APPELLATE COUNSEL WAS
CONSTITUTIONALLY INEFFECTIVE BECAUSE
COUNSEL FAILED TO RAISE ARGUMENTS
CONCERNING THE TRIAL COURT'S FAILURE TO
CHARGE THE JURY ON ACCOMPLICE LIABILITY

POINT III

THE PCR COURT ABUSED ITS DISCRETION BY
FAILING TO CONDUCT AN EVIDENTIARY
HEARING TO ADDRESS THE CLAIMS RAISED BY
DEFENDANT

Defendant's pro se supplemental brief presents the following

additional arguments:

POINT I

CONTRARY TO THE PCR COURT'S RULING
APPELLANT IS ENTITLED TO RELIEF BECAUSE
APPELLATE COUNSEL WAS INEFFECTIVE FOR
NOT RAISING THAT THE TRIAL COURT
COMMITTED REVERS[IB]L[E] ERROR BY
LIMITING DEFENSE COUNSEL'S CROSS-
EXAMINATION OF THE STATE['S] MAIN
WITNESS

POINT II

THE PCR COURT ERRED FOR NOT RULING THAT
TRIAL COUNSEL WAS INEFFECTIVE FOR
FAILING TO OBJECT TO THE VIDEOTAPED

13

IDENTIFICATION OF DEFENDANT BY A DETECTIVE

POINT III

THE PCR COURT ERRED FOR NOT RULING THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE ADMISSIBILITY OF THE HAT INTO EVIDENCE AND FOR FAILING TO ARGUE THAT THE [STATE] FAILED TO PROVE UNINTERRUPTED CHANGE OF CUSTODY

POINT IV

THE PCR COURT ERRED FOR NOT RULING THAT TRIAL COUNSEL PROVIDED INEFFECTIVE REPRESENTATION DURING SENTENCING

III.

In the absence of an evidentiary hearing, we may review without deference "both the factual findings and legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 421 (2004). After conducting our review of defendant's claims, we concur with Judge Jimenez's findings, and affirm substantially for the same reasons expressed in his written opinion.

A.

New Jersey's PCR petition serves as an "analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). "[N]either a substitute for direct appeal" for those criminally convicted nor a vehicle to re-

14

litigate matters already resolved on their merits, PCR proceedings can offer the best opportunity for ineffective assistance claims to be reviewed. Id. at 459-60. When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, entitlement to the requested relief. Id. at 459. To sustain this burden, defendants must articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

Claims are procedurally barred if they could have been made on direct appeal, R. 3:22-4, or are made after a prior adjudication on the merits, see R. 3:22-5. See also State v. McQuaid, 147 N.J. 464, 483 (1997) (recognizing "a

defendant may not use a petition for [PCR] as an opportunity to relitigate a claim already decided on the merits").  "A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence."  R. 3:22-4(a).

Importantly, this court's review of counsel's performance under the first Strickland requirement "must be highly deferential," Strickland, 466 U.S. at 689, and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," requiring defendants to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  "Merely because a trial strategy fails does not mean that counsel was ineffective."  State v. Bey, 161 N.J. 233, 251 (1999).  Further, "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing."  R. 3:22-10(c); see State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Strickland, 466 U.S. at 691. Under Strickland's second requirement, a defendant must also show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Errors with "some conceivable effect on the outcome" fall short of warranting relief. Id. at 693.

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. See Cummings, 321 N.J. Super. at 170. Rather, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997). Evidentiary hearings are warranted only when: "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)).

B.

Against this well-settled legal backdrop, we concur defendant's claims did not warrant relief or further scrutiny by evidentiary hearing. We agree with Judge Jimenez's determination that defendant baldly asserted counsel's deficiencies and failed in each instance to show the requisite prejudice required under Strickland's second and equally important requirement.

Regarding defendant's proffered alibi, we recognize that in certain circumstances, "[f]ailure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353. Nevertheless, here defendant failed to show his sister-in-law would have testified or that such testimony possessed the capacity to bring about a different result. He did not present a statement by his sister-in-law, sworn or otherwise, to buttress his claims. As Judge Jimenez found, the eyewitness testimony from the co-defendant, corroborated by video and DNA evidence, was weighty evidence, unlikely to be negated by an alleged alibi witness, whose account was never properly presented to the court as required. Defendant's unsupported claims of an alibi faced contradiction by evidence placing him at the scene of the crime, and his "bald assertions," standing alone, were insufficient to show that "counsel's representation fell below an objective standard of

18

reasonableness," Strickland, 466 U.S. at 688, or demonstrate trial counsel's "decision[] [failed to] follow[] a sound strategic approach to the case." State v. Pierre, 223 N.J. 560, 579 (2015) (citing Strickland, 466 U.S. at 689); see, e.g., State v. Gideon, 244 N.J. 538, 557-58 (2021) (rejecting the defendant's alibi claim "rest[ing] exclusively" on testimony that would contradict evidence proffered by the defendant at trial).

We similarly concur with Judge Jimenez's findings that defendant failed to make a sufficient showing that trial counsel was deficient, or the court erred in not sua sponte providing an accomplice liability instruction. We add that this argument regarding the omitted instruction could have, and therefore should have, been raised on direct appeal and is therefore inappropriately raised on PCR petition. See R. 3:22-3, -4. Nonetheless, we agree that the State's theory of the case cast defendant as a principal to the robbery, and, as such, no instruction was required. Although "the [trial] court is obligated to provide the jury with accurate and understandable jury instructions regarding accomplice liability even without a request by defense counsel," State v. Bielkiewicz, 267 N.J. Super. 520, 527 (App. Div. 1993), "[w]hen the State's theory of the case only accuses the defendant of being a principal, and a defendant argues that he was

not involved in the crime at all, then the judge is not obligated to instruct on accomplice liability," State v. Maloney, 216 N.J. 91, 106 (2013).

We further note that such an instruction created no prejudice under Strickland, as it arguably would have done little other than provide the jury with a second theory of liability on which to convict defendant. "A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." N.J.S.A. 2C:2-6(a). Indeed, an accomplice commits the same crime as the principal, see State v. White, 98 N.J. 122, 130 (1984), and the accomplice is subject to the exact same liability as the principal. N.J.S.A. 2C:2-6(b). Thus, any claim of prejudice for failing to present the instruction for an alternative path to an equally significant guilty verdict is devoid of merit.

Defendant's pro se claims similarly fail. As Judge Jimenez found, the trial record belies any claim that counsel's cross-examination of witnesses, including Fernandez, fell below the standard of competence or exceeded the bounds of otherwise immunized sound, even if unsuccessful, trial strategy.

Regarding defendant's argument that the judge at trial improperly limited cross-examination of co-defendant, we note that defendant raised on direct appeal challenges to admission of Fernandez's "unreliable" testimony at trial and

the court's alleged failure to properly instruct the jury regarding its consideration of this testimony. We reviewed the testimony and determined defense counsel sufficiently highlighted the unreliability of his testimony and found any error harmless given the weight of the remaining evidence against defendant. Matos, slip op. at 20-21. Importantly, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding . . . or in any appeal taken from such proceedings." R. 3:22-5. To the extent this issue was not barred as previously raised, it could and should have been raised, placing it similarly outside the scope of appropriate PCR claims. R. 3:22-3, -4.[2] Regardless, we agree with Judge Jimenez's determination that Fernandez's inconsistent statements, bias, and plea agreement with the State were emphasized to the jury and concur that defendant has failed to establish any prejudice or sufficiently demonstrated that different or prolonged cross-examination would have probably changed the outcome.

---

[2] We likewise note defendant's challenges to police narration of the video is barred as not raised on direct appeal, but nevertheless concur with Judge Jimenez's determination that any fleeting testimony was harmless.

A-1734-22

Similarly, we note defendant's challenge to the chain of custody concerning the red hat should have been raised on direct appeal. As to the challenge to trial counsel's strategy and cross-examination concerning the red hat, we concur with Judge Jimenez's findings that defendant failed to show counsel was deficient in failing to move to suppress the evidence when the stop and consent search presented no legitimate Fourth Amendment concerns. We likewise agree counsel competently cross-examined witnesses regarding the storage and testing of the red hat and objected to its admission into evidence and was not deficient in electing not to "re-test" the DNA, given the strength of that evidence and testimony. Critically, defendant failed to show a probability that different strategic choices would have led to a different outcome.

As to defendant's claim that trial counsel failed to sufficiently argue available mitigating factors, we similarly find no deficiency in counsel's performance and concur with Judge Jimenez's findings. We further note, however, that we considered the court's sentencing findings on direct appeal and rejected defendant's excessive sentencing challenge. PCR is not an appropriate vehicle to raise or rehash excessive sentencing challenges. It is well-settled that "mere excessiveness of sentence otherwise within authorized limits, as distinct from illegality by reason of being beyond or not in accordance with legal

22

authorization, . . . can only be raised on direct appeal from the conviction." State v. Clark, 65 N.J. 426, 437 (1974). If a sentence falls within the statutory range, "issues relating to the determination of aggravating and mitigating factors, the balancing thereof and the conclusions resulting from that balancing generally deal with claims of 'excessiveness,' as opposed to 'illegality.'" State v. Ervin, 241 N.J. Super. 458, 472 (App. Div. 1989).

We also agree with Judge Jimenez's findings, rejecting defendant's claims that counsel's arguments were insufficient for mitigating factors six, N.J.S.A. 2C:44-1(b)(6), "defendant has compensated or will compensate the victim of . . . defendant's conduct for the damage or injury that the victim sustained, or will participate in a program of community service"; eight, N.J.S.A. 2C:44-1(b)(8), "defendant's conduct was the result of circumstances unlikely to recur"; or eleven, N.J.S.A. 2C:44-1(b)(11), "[t]he imprisonment of . . . defendant would entail excessive hardship to . . . defendant or . . . defendant's dependents" or that different advocacy would have altered the outcome.

To the extent we have not addressed any additional arguments raised by defendant, we determine they lack sufficient merit to warrant further discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-1734-22